J-S32024-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :    IN THE SUPERIOR COURT OF
                                                  :                     PENNSYLVANIA
                                                  :
                    v.                                   :
                                                  :
                                                  :
AUSTIN EADDY,                           :
                                                  :
                    Appellant           :    No. 3869 EDA 2017

Appeal from the Judgment of Sentence October 25, 2017
In the Court of Common Pleas of Chester County Criminal Division at
No(s):  CP-15-CR-0001537-2016

BEFORE:  SHOGAN, J., NICHOLS, J., and MURRAY, J.

MEMORANDUM BY NICHOLS, J.:             **FILED OCTOBER 17, 2019**

Appellant Austin Eaddy appeals from the judgment of sentence imposed after a jury found him guilty of two counts of attempted rape and one count of indecent assault,[1] but acquitted him of numerous other sexual offenses and one count of theft.[2]  Appellant claims the trial court erred in excluding evidence regarding the complainant, the arresting officer, and an independent eyewitness.  Additionally, Appellant challenges the trial court's decision to impose restitution to replace the complainant's cell phone.  We affirm Appellant's conviction and the sentence of imprisonment, but vacate the judgment of sentence to the extent it ordered restitution.

---

[1] 18 Pa.C.S. §§ 903 & 3121(a)(1) (attempted rape by threat of forcible compulsion), 3121(a)(2) (attempted rape by threat of forcible compulsion); and 18 Pa.C.S. § 3126(a)(1) (indecent assault—without consent), respectively.

[2] 18 Pa.C.S. § 3921(a)(1) (theft by unlawful taking or disposition).

The Commonwealth alleged Appellant took the complainant's phone and sexually assaulted her in a parking garage at West Chester University. Appellant and the complainant were both students at the university, but did not know each other before the incident in question. Appellant and the complainant admitted drinking alcohol at separate parties before meeting.

Surveillance video showed Appellant and the complainant meeting on the street at approximately 2:00 a.m. on April 1, 2016. They walked across campus together and eventually entered a parking garage through a window in the concrete wall. Once inside the parking garage, the complainant handed Appellant a phone, and Appellant put the phone in his pocket. Shortly thereafter, Appellant and the complainant embraced near a set of garage doors, which were closed at the time. The video showed the two apparently embracing, kissing, and engaging in other intimacies by the garage doors. Appellant and the complainant then walked from the garage doors to a space between two parked cars. As discussed below, Appellant and the complainant provided different accounts of what happened between the two cars.

An independent witness, Catherine Doherty, entered the parking garage. She could not recall where she parked and was pressing the button on her key fob. She then heard a distressed female voice asking for her phone. According to Ms. Doherty, she saw Appellant standing in front of the complainant. The complainant was on her back on top of the hood of a car, and the complainant's pants were down. When Ms. Doherty asked what was going on, Appellant stated, "[O]h shit," and ran. N.T., 7/18/17, at 214, 221.

The complainant left in a different direction than Appellant and was crying and pulling up her pants. Ms. Doherty initially pursued Appellant, but Appellant exited the parking garage through the window in the concrete wall.

Ms. Doherty then caught up with the complainant. Ms. Doherty did not know the complainant before the incident, but learned that they both lived in the same residence hall. Ms. Doherty walked with the complainant to the residence hall and opened the door for her. A security guard noticed that the complainant's knee was bleeding and called West Chester University police. Although the complainant initially stated that she wanted to go to her room, the complainant then told the guard she was sexually assaulted.

Officer Matthew Rychlak responded to the dispatch based on the security guard's initial call. As the officer was parking his car by the residence hall, he received an update that the complainant also reported a sexual assault. The officer entered the residence hall and initially attempted to interview the complainant in a common room of the residence hall. However, he then had Ms. Doherty enter the room and interviewed the complainant with Ms. Doherty present. The officer indicated that the complainant appeared more comfortable with Ms. Doherty present.

During this interview, the complainant told the officer she was sexually assaulted. The complainant initially reported she was in the parking garage

when a black male approached her and forced her to engage in oral and vaginal intercourse.[3]

An ambulance took the complainant to a hospital where she underwent a sexual assault examination. Ms. Doherty accompanied the complainant to the hospital. A blood test revealed that the complainant's blood-alcohol concentration was over .20%. The sexual assault examination did not detect the presence of Appellant's DNA on the complainant. Officer Rychlak separately interviewed Ms. Doherty at the hospital, and she told the officer that she witnessed a rape.

Detective Roland Walker III of the West Chester University Police Department was assigned as the lead investigator. As part of the investigation, Sergeant Daniel Irons reviewed video from several surveillance cameras in and around the parking garage. A review of the video recordings led to the identification of Appellant as the individual with the complainant inside the parking garage.

Detective Walker filed a criminal complaint on the evening of April 1, 2016. Detective Walker's affidavit of probable cause summarized the findings of the investigation. According to the affidavit of probable cause, Detective Walker took a second statement from the complainant with Officer Rychlak and Ms. Doherty present, and took a statement from Ms. Doherty. Detective Walker alleged that he was able to identify Appellant from the surveillance

---

[3] The complainant initially identified her assailant as "Jalil." The next day, the complainant reported that she did not know who attacked her.

video. Detective Walker stated that he took possession of the evidence obtained from the sexual assault examination and placed it into an evidence room. Detective Walker's affidavit of probable cause incorporated the complainant's initial allegations, some of which were inconsistent with the surveillance videos. These included the complainant's allegation regarding the street she was on before entering the garage and her assertion that an unknown male approached her in the garage.

Appellant, who had left the campus sometime after the incident, was taken into custody on April 6, 2016. The Commonwealth subsequently filed an information charging Appellant with rape, attempted rape, indecent assault, and theft, among other offenses.

Appellant retained counsel and submitted numerous pretrial motions seeking discovery and the admission of evidence regarding the complainant, Detective Walker, and Ms. Doherty. On June 12, 2017, the Commonwealth filed a motion *in limine* to preclude Appellant from referring to (1) the complainant's prior sexual conduct, including her text messages to third parties, (2) Detective Walker's personnel file, and (3) Ms. Doherty's previous sexual assault.

On June 19, 2017, the trial court held a hearing on the Commonwealth's motion *in limine.* The trial court heard parties' general arguments discussing the bases of the motion in general terms. The parties also indicated that Detective Walker, who submitted the initial criminal complaint and prepared the affidavit of probable cause, was no longer employed by the West Chester

University Police Department. *See* N.T., 6/19/17, at 13. The trial court scheduled an *in camera* conference, with a court reporter present, for June 23, 2017, to hear arguments based on more specific facts. *See id.* at 33, 42.

On July 10, 2017, the trial court entered an order granting the Commonwealth's motion *in limine*. The trial court, in a footnote to its order, reasoned that (1) the Rape Shield Law, 18 Pa.C.S. § 3104, precluded Appellant from presenting the complainant's text messages regarding her "sexual proclivities[,]" (2) the personnel file of Detective Walker was not relevant, and (3) the evidence of a previous sexual assault against Ms. Doherty were irrelevant and any relevant purpose would be outweighed by the potential for prejudice. Order, 7/10/17, at n.1, 3-4 (unpaginated). The docket and record contained no indication that the trial court held a formal *in camera* hearing. However, the trial court later referred to "off the record" proffers made by Appellant. *Id.* at n.1, 3.

Appellant proceeded to a jury trial. The Commonwealth called numerous witnesses, including Officer Rychlak, Sergeant Irons, the complainant, and Ms. Doherty, among others. The Commonwealth did not call Detective Walker as a witness.

At trial, the complainant testified that she had been drinking at several parties before she met Appellant. The complainant stated she could not recall the events after the last party that she attended. Specifically, the complainant testified that she did not remember meeting Appellant on the street, walking with him to the parking garage, or entering the parking garage. She could

not explain why she appeared to hand Appellant a phone after they entered the garage. She also could not remember her interactions with Appellant while they were by the garage doors.

According to the complainant, she first recalled being with Appellant when they were between the two cars in the parking lot and Appellant told her "to suck his dick." N.T., 7/18/17, at 100. Appellant pushed her head down, and when she tried to stop, Appellant pushed her aside and choked her. The complainant testified that Appellant had his penis in her mouth. Appellant eventually made her get up and get face down on the hood of the car. The complainant could not remember how Appellant had her phone, but recalled asking him to give back her phone. Appellant did not return her phone. Instead, she felt Appellant's penis at her "butt." *Id.* at 108. The complainant then heard a female, Ms. Doherty, call out. The complainant pulled up her pants and left.

The complainant verified that her phone was later found outside the garage. However, when the phone was returned to her, the screen was shattered. She testified that the screen of the phone was not damaged when she last remembered using the phone.

On cross-examination, the complainant acknowledged that she was convicted for having a false identification several months after the incident in the parking garage. The complainant testified that she was interested in education and became an education major after the incident. She conceded

that certain convictions or reports of misbehavior, such as indecently exposing herself, could disqualify her from becoming a teacher. *Id.* at 205.

Appellant also testified at trial. Appellant admitted that he was with the complainant before the incident in question. According to Appellant, he and the complainant met on the street, and they engaged in small talk while walking together across campus. Once they were outside the parking garage, he and the complainant began kissing and groping each other. Appellant testified that the complainant suggested they "hang out" without worrying about a relationship. N.T., 7/21/17, at 29-30. They then climbed into the parking garage though the window in the concrete wall.

Appellant testified that while they were inside the parking garage, the complainant asked him to hold her phone because it would not fit in the pockets of her shorts. The complainant then handed him her phone, which he placed in his pocket. Appellant stated that he and the complainant began kissing while they were by the garage door. The complainant pulled her top down to show him her pierced nipple. According to Appellant, he and the complainant agreed to "hook up," which Appellant believed meant having sexual intercourse. *Id.* at 36. Throughout his testimony, Appellant suggested that the complainant took the initiative throughout the incident. Appellant further indicated that the complainant pointed in the direction of the two cars and suggested they move to that area.

Appellant testified that while he and the complainant were between the two cars, Ms. Doherty interrupted them just as the complainant started to pull

down her shorts. Appellant asserted that he and the complainant were both standing, and he was fully clothed, standing behind the complainant. Appellant denied choking or striking the complainant or otherwise forcing her to perform any sexual act. Appellant also denied that any sexual intercourse occurred during the incident.

Appellant testified that he and the complainant agreed to part ways when they saw yellow lights flashing from a car. He fled when he sensed someone approaching him. As he was exiting the parking garage, he heard the complainant yell out for her phone and state that he stole her phone. Once outside, Appellant dropped the complainant's phone in the grass by the parking garage.

In his arguments to the jury, Appellant asserted that the complainant was a willing participant in their interactions and voluntarily handed him her phone for him to hold as they reached the garage door. Appellant challenged the complainant's credibility and her claims that he assaulted her. Appellant specifically referred to the surveillance video and the absence of any evidence that he left DNA on the complainant.

Appellant also emphasized that Ms. Doherty was the first person to use the term "rape." He argued that Ms. Doherty misconstrued the incident and only assumed that she saw "a rape." Appellant suggested that Ms. Doherty's misunderstanding tainted the complainant's recollection of events, as well as the police investigation. Further, Appellant asserted that the police investigation into the reported sexual assault was deficient and that the police

failed to corroborate all of the complainant's allegations before filing criminal charges.

The Commonwealth, in its argument to the jury, conceded that the initial interactions between complainant and Appellant were consensual. The Commonwealth asserted that the nature of the interaction changed when Appellant lowered his pants and exposed his penis, shortly before Appellant and the complainant moved to the area between two cars. The Commonwealth argued that once Appellant and the complainant moved between the two cars, he compelled her to engage in sexual intercourse.

As to the complainant's phone, the Commonwealth acknowledged that the surveillance video showed the complainant handing Appellant a phone as they reached the garage doors. The Commonwealth argued that the phone seen on the surveillance video was Appellant's phone and not the complainant's. Further, the Commonwealth argued that Appellant, at some time before assaulting the complainant between the two cars, took the complainant's phone to prevent her from calling for help.

At the conclusion of trial, the jury found Appellant guilty of two counts of attempted rape and one count of indecent assault—without consent. The jury acquitted Appellant of nine other sexual offenses and the one count of theft related to the complainant's phone.

On October 25, 2017, the trial court sentenced Appellant to four to ten years' imprisonment. The trial court determined that Appellant was not a sexually violent predator and ordered him to register as a tier-three sexual

offender. The trial court ordered restitution in the amount of $582.99 to replace the complainant's phone.

Appellant filed a timely notice of appeal and complied with the trial court's order to file and serve a Pa.R.A.P. 1925(b) statement. The trial court filed a Rule 1925(a) opinion.

Appellant presents the following issues for this Court's review:

[1]. Whether, following the filing of two separate motions by [Appellant's] counsel, requesting an *in camera* hearing and evidentiary hearing, pursuant to the requirements of Commonwealth Rape Shield statute, the trial court committed impermissible errors by never granting [Appellant's] counsel's separate written requests for a hearing and excluding any reference to specific text messages, offered to impeach [the complainant]'s credibility, thus excluding the offered text messages from the trial record.

[2]. Whether, following the granting of an *in camera* review, the trial court committed impermissible error by excluding from the trial record as irrelevant and a collateral matter, any fact or reference to the personnel file of former University Detective Rolland Walker, III, who prior to his employment separation, was the affiant and officer responsible for the filing and investigation of this matter.

[3]. Whether the trial court committed impermissible error by excluding from the trial record as irrelevant, any reference that the eyewitness, who was the first person to allege that a "rape" occurred, previously approached police about having been raped in the vicinity of campus, at an earlier point during the academic year.

[4]. Whether the trial court erred in compelling Appellant to pay restitution for a replacement mobile phone after a jury acquitted Appellant of all theft-related offenses and conducted no inquiry into Appellant's ability to make restitution.

Appellant's Brief at 6-7.

Appellant's first three issues focus on the trial court's order granting the Commonwealth's motion *in limine*. Our standard of review is as follows:

When reviewing the denial of a motion *in limine*, we apply an evidentiary abuse of discretion standard of review. The admission of evidence is committed to the sound discretion of the trial court and our review is for an abuse of discretion.

*Commonwealth v. Kane*, 188 A.3d 1217, 1229 (Pa. Super. 2018) (citations omitted), *appeal denied*, 197 A.3d 1180 (Pa. 2018). The Pennsylvania Supreme Court has emphasized:

An appellate court will not find an abuse of discretion "based on a mere error of judgment, but rather . . . where the [trial] court has reached a conclusion which overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will." Importantly, an appellate court should not find that a trial court abused its discretion merely because the appellate court disagrees with the trial court's conclusion. Indeed, "when reviewing the trial court's exercise of discretion, it is improper for an appellate court to 'step[ ] into the shoes' of the trial judge and review the evidence *de novo*."

*Commonwealth v. Gill*, 206 A.3d 459, 466-67 (Pa. 2019) (citations omitted).

Generally, "[a]ll relevant evidence is admissible, except as otherwise provided by law. Evidence that is not relevant is not admissible." Pa.R.E. 402. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Pa.R.E. 401. However, the trial court "may exclude relevant evidence if its probative value is outweighed by a

danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Pa.R.E. 403. "The credibility of a witness may be impeached by any evidence relevant to that issue, except as otherwise provided by statute or these rules." Pa.R.E. 607(b).

Moreover,

[t]he Confrontation Clause in the Sixth Amendment to the United States Constitution provides that all criminal defendants enjoy "the right to confront and cross-examine adverse witnesses." Moreover, "the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination."

Although the right of cross-examination is a fundamental right, it is not absolute. The trial court may place reasonable limits on defense counsel's cross-examination of a prosecution witness "based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." "Generally speaking, the Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish."

*Commonwealth v. Rosser*, 135 A.3d 1077, 1087-88 (Pa. Super. 2016) (*en banc*) (citations and footnote omitted).

In his first issue, Appellant claims that the trial court erred by granting the Commonwealth's motion *in limine* to exclude the complainant's text messages. Appellant focuses on five messages sent by the complainant to third parties before the incident in question. According to Appellant, those messages indicated that the complainant enjoyed the attention she received

from her body piercing and included statements regarding "rough sex," being choked, and her preference for sexual partners of the same race as Appellant. Appellant's Brief at 16, 19, 30.

Appellant asserts that the admission of these messages was necessary to impeach the complainant's allegations that a sexual assault occurred, corroborate his version of the events, establish his state of mind, and rebut the Commonwealth's theory of the case. *Id.* at 16-17, 18-19 (discussing *Commonwealth v. Reed*, 644 A.2d 1223 (Pa. Super. 1994) (plurality)), 25-26. Additionally, Appellant asserts that the Rape Shield Law should not have precluded messages that did not relate to the complainant's prior sexual conduct. *Id.* at 16-17. Lastly, Appellant argues the trial court should have held an *in camera* hearing before granting the Commonwealth's motion *in limine*.

The relevant version of the Rape Shield Law stated:

**(a) General rule.—**Evidence of specific instances of the alleged victim's past sexual conduct, opinion evidence of the alleged victim's past sexual conduct, and reputation evidence of the alleged victim's past sexual conduct shall not be admissible in prosecutions under this chapter except evidence of the alleged victim's past sexual conduct with the defendant where consent of the alleged victim is at issue and such evidence is otherwise admissible pursuant to the rules of evidence.

**(b) Evidentiary proceedings.—**A defendant who proposes to offer evidence of the alleged victim's past sexual conduct pursuant to subsection (a) shall file a written motion and offer of proof at the time of trial. If, at the time of trial, the court determines that the motion and offer of proof are sufficient on their faces, the court shall order an in camera hearing and shall make findings on the record as to the relevance and admissibility of the proposed evidence pursuant to the standards set forth in subsection (a).

18 Pa.C.S. § 3104(a)-(b) (subsequently amended eff. Aug. 27, 2019).

"The purpose of the Rape Shield Law is to prevent a sexual assault trial from denigrating into an attack upon the victim's reputation for chastity." ***Commonwealth v. Killen***, 680 A.2d 851, 853 (Pa. 1996) (citation omitted). "Moreover, "[t]he Rape Shield Law is intended to exclude irrelevant and abusive inquiries regarding prior sexual conduct of sexual assault complainants." ***Commonwealth v. Jerdon***, ___ A.3d ___, 2019 PA Super 202, 2019 WL 2724330 at *4 (Pa. Super. July 1, 2019) (citations omitted).

Under Section 3104(b), a defendant must initially provide "a specific proffer of exactly what evidence he or she seeks to admit and precisely why it is relevant to the defense." ***Commonwealth v. Burns***, 988 A.2d 684, 691 (Pa. Super. 2009) (citation omitted). Thereafter, "the trial court must determine if the proffered reason for introduction of past sexual conduct evidence is mere speculation or conjecture. If the proffered evidence is not speculation or conjecture, the trial court must conduct an *in camera* hearing." ***Commonwealth v. Palmore***, 195 A.3d 291, 295 (Pa. Super. 2018) (citations omitted).

This Court has stated that

[e]vidence that tends to impeach a witness' credibility is not necessarily inadmissible because of the Rape Shield Law. When determining the admissibility of evidence that the Rape Shield Law may bar, trial courts hold an *in camera* hearing and conduct a balancing test consisting of the following factors: "(1) whether the proposed evidence is relevant to show bias or motive or to attack credibility; (2) whether the probative value of the evidence outweighs its prejudicial effect; and (3) whether there are

alternative means of proving bias or motive or to challenge credibility."

As such, evidence of a claimant's sexual history may be admissible if "the evidence is relevant to exculpate the accused, more probative than prejudicial, and non-cumulative in nature."

*Jerdon*, 2019 WL 2724330 at *4 (citations omitted).

Regarding consent, "evidence cannot be used to bolster a consent defense when the admitted purpose of the evidence is to prove that the victim acted in conformity with past behavior on the date in question." *Commonwealth v. Guy*, 686 A.2d 397, 401 (Pa. Super. 1996). Additionally, "this [C]ourt has held that evidence of past sexual conduct by the victim with third persons is of little relevance to the issue of consent between the victim and a defendant when the victim and defendant did not have a prior sexual relationship." *Commonwealth v. Cramer*, 195 A.3d 594, 603 (Pa. Super. 2018) (citation omitted).

In *Reed*, the defendant alleged that the complainant told him that she had sex with his son shortly before the alleged sexual assault. *Reed*, 644 A.2d at 1225. The trial court precluded the defendant from asking the complainant if she had made the statement. *Id.* at 1230. This Court, in a three-judge panel with two judges concurring in result, concluded that the defendant was entitled to a new trial based on this and other rulings by the trial court. *Id.* at 1232.

In its discussion of the Rape Shield Law, the *Reed* Court reasoned that the purposes of defendant's proffer of the complainant's statement were

separable. *Id.* at 1230-31. The Court concluded that Rape Shield Law prohibited the defendant from using the statement to prove the fact asserted therein, that is, that she had sex with his son. *Id.* at 1230-31. However, the Court determined that the defendant was entitled to examine the complainant as to whether she made the statement to the defendant. The Court reasoned that the fact that the complainant made the statement could lend "credibility to [the defendant's] story" and help "explain [his] state of mind." *Id.* at 1231. The Court emphasized that evidence that the complainant simply made the statement to the defendant did not implicate the Rape Shield Law's purpose of precluding evidence "that the victim's promiscuity proves that she 'asked for it.'" *Id.*

Instantly, we find no merit to Appellant's argument that **Reed** should control. At the outset, **Reed** was a plurality decision and has no precedential value. **See Commonwealth v. Hurst**, 532 A.2d 865, 869 (Pa. Super. 1987). In any event, Appellant's proffer involved statements made to third parties. Appellant did not know the complainant before this incident, and there was no indication that Appellant was aware of the complainant's preferences or prior conduct with other parties. **See Cramer**, 195 A.3d at 603. Appellant did not allege that the complainant expressed any of sentiments in her messages to him during the incident. Therefore, to the extent **Reed** is persuasive authority, it is distinguishable.

Furthermore, there was no dispute that the interactions between Appellant and the complainant were consensual for the majority of the time

they were by the garage doors. This included Appellant's testimony that the complainant voluntarily showed Appellant her pierced nipple. As to their interactions between the two cars, Appellant denied choking the complainant or otherwise physically coercing her to engage in any sexual activity. Appellant further denied that any intercourse occurred when he and the complainant were between the two cars.

Therefore, the record supports the trial court's conclusion that the complainant's messages would not impeach her testimony. Instead, Appellant's proffer suggested that the complainant consented based on her statements regarding her prior conduct and sexual preferences. Accordingly, Appellant's proffer was irrelevant and sought to admit "the exact type of evidence that the Rape Shield Law was designed to exclude." **See** Order, 7/10/17, at n.1, 3; **Guy**, 686 A.2d at 401.

In sum, we discern no error in the trial court's ruling to grant the Commonwealth's motion *in limine* as to the complainant's text messages. **See Kane**, 188 A.3d at 1229. Appellant's contention that the trial court abused its discretion in balancing the interests of the Rape Shield Law against his constitutional rights of confrontation also lack merit. **See Jerdon**, 2019 WL 2724330 at *4; **accord Rosser**, 135 A.3d at 1087-88. Lastly, because Appellant has not shown that his proposed evidence was admissible, he has not demonstrated any reversible error in the trial court's decision to rule on his proffer without a formal *in camera* hearing. Therefore, no relief is due.

In his second issue, Appellant argues that the trial court erred in excluding evidence from Detective Walker's personnel file. By way of background to this claim, Detective Walker was the lead investigator in this case and prepared the affidavit of probable cause in support of the criminal complaint filed on April 1, 2016.

Appellant issued numerous subpoenas on West Chester University in February 2017 and filed a motion requesting a review of Detective Walker's personnel file. According to Appellant, discovery was necessary based on allegations that Detective Walker mistreated minorities. Following a hearing, Appellant and West Chester University attempted to come to an agreement on the scope of the searches of its records.

On March 24, 2017, West Chester University filed a motion to file documents under seal. In its motion, the university indicated that its search resulted in over 1,200 pages of documents. On April 25, 2017, the trial court granted the university's motion. The trial court directed that it would review the documents and determine the appropriate procedure for Appellant and the Commonwealth to review the documents. Order, 4/25/17, at 2 (unpaginated).

As noted above, the Commonwealth filed its motion *in limine* seeking, in part, to preclude Appellant from referencing Detective Walker's personnel file. The Commonwealth asserted:

> [Appellant] may seek to admit Detective Walker's personnel records, which contain prior instances of alleged racial and gender discrimination. There is no nexus between the incidents contained

in Detective Walker's personnel file and the allegations of rape in this case. Therefore, the Commonwealth seeks to preclude its admissibility under Rules 401 and 404(b).

Commonwealth's Mot. *in Limine*, 6/12/17, at 5.

At the hearing on June 19, 2017, the Commonwealth maintained that there was no nexus between the allegations contained in Detective Walker's personnel file and the charges against Appellant. N.T., 6/19/17, at 12. The Commonwealth asserted that Detective Walker's role in the investigation was limited and that "most of the investigation was done by other officers." *Id.* at 13. The Commonwealth further stated: "Detective Walker had limited contact with [Appellant]. He did not speak with [Appellant]. He did not question [Appellant]. He didn't see [Appellant] prior to arrest." *Id.* at 12-13.

Appellant's counsel disagreed and argued that Detective Walker "start[ed] with the affidavit of probable cause which initiated" the entire case against Appellant. *Id.* at 28. Appellant's counsel claimed that the detective's "thumbprint [was] enmeshed in the entire case." *Id.* Appellant's counsel, however, noted that he was required to "tread very lightly" in light of the trial court's sealing order. *Id.* As indicated above, the trial court scheduled an *in camera* hearing to hear additional arguments and facts, but it is unclear whether a formal hearing was held.

The trial court, in its July 10, 2017 order, granted the Commonwealth's motion *in limine* as to Detective Walker's personnel file. The trial court concluded that Detective Walker's prior behavior did not relate to Appellant's charges or Detective Walker's motive to fabricate. Order, 7/10/17, at n.1, 4.

The trial court noted that Appellant's counsel had "ample opportunity" to review the personnel file.  ***Id.***

In his Rule 1925(b) statement, Appellant challenged the trial court's decision to exclude evidence regarding Detective Walker.  Appellant's Rule 1925(b) Statement at ¶ 3.  Appellant also raised a claim that the Commonwealth committed a ***Brady***[4] violation by withholding evidence favorable to the defense and material to his guilt or punishment.  ***Id.*** at ¶ 5. The trial court concluded that it properly resolved Appellant's evidentiary issue and that Appellant's ***Brady*** issue was waived and, in any event, meritless.

On appeal, Appellant initially notes that the trial court received a file consisting of over 1,200 pages.  Appellant's Brief at 33.  Appellant claims that the trial court's decision to exclude the entire report lacked a "fact-based rationale."  ***Id.*** at 34.  Appellant suggests that the trial court misapplied the relevant case law and fashioned a new rule requiring a defendant to file a disciplinary complaint against an officer before information in a personnel file could be deemed relevant.  ***Id.*** at 36 (discussing ***Commonwealth v. Akrie***, 159 A.3d 982 (Pa. Super. 2017)).  Appellant adds that in the cases relied on by the trial court, at least some evidence from an officer's personnel file was admitted or should have been admitted at trial.  ***See id.*** at 34-35.

Appellant further emphasizes that the entire police investigation into the complainant's report of a sexual assault was flawed.  He asserts Officer

---

[4] ***Brady v. Maryland***, 373 U.S. 83 (1963).

- 21 -

Rychlak interviewed the complainant with Ms. Doherty present and Ms. Doherty was the first person to characterize the incident as a rape. *Id.* at 37. He further notes that Sergeant Irons missed key details when reviewing the surveillance video from the night in question, which Detective Walker failed to correct when preparing the affidavit of probable cause. *Id.* at 39. Appellant contends that information in Detective Walker's disciplinary file could be relevant because the detective "exercised direct supervisory authority over all law enforcement officers involved. Further, Walker was tasked with training these responding officers." *Id.* However, Appellant does not assert that he had any personal contact with Detective Walker. Appellant also does not refer to any portion of the record indicating that Detective Walker directly supervised Officer Rychlak's or Sergeant Irons's initial investigations.

Additionally, Appellant asserts that the Commonwealth initially misled him regarding the circumstances under which Detective Walker left the West Chester University Police Department. *Id.* at 35. Appellant also claims that the trial court denied him the opportunity to make an evidentiary record prior to trial. *Id.* at 36.

This Court has discussed the admissibility of an officer's disciplinary history as follows:

> The pertinent case law permits a police witness to be cross-examined about misconduct as long as the wrongdoing is in some way related to the defendant's underlying criminal charges and establishes a motive to fabricate. ***Commonwealth v. Peetros***, . . . 535 A.2d 1026 ([Pa.] 1987) (police witness had been demoted after it was discovered he repeatedly took bribes; defendant was improperly restricted from impeaching him with this evidence

- 22 -

since it bolstered entrapment defense in defendant's bribery prosecution); *Commonwealth v. Dawson*, . . . 405 A.2d 1230 ([Pa.] 1979) (police officer was under investigation at trial and had been demoted for beating defendant's co-defendant; defendant should have been permitted to question officer about the matter since it provided officer with motive to obtain conviction against defendant as well as to fabricate fact that defendant had confessed); *Commonwealth v. Sullivan*, . . . 402 A.2d 1019 ([Pa.] 1979) (police witness faced suspension based upon outcome at defendant's trial and defendant should have been allowed to explore that matter at his trial); *Commonwealth v. Shands*, . . . 487 A.2d 973 ([Pa. Super.] 1985) (defendant awarded new trial because he had not been permitted to impeach officer with fact that he was part of group of police officers who were racially biased, made false arrests, and perjured themselves in criminal prosecutions).

However, if the prior police behavior is unrelated to the present matter and irrelevant, the trial court is permitted to restrict questioning on the prior incident. *Commonwealth v. Boczkowski*, . . . 846 A.2d 75 ([Pa.] 2004) (fact that police witness withheld evidence in prior case was not relevant because there was no evidence of withholding evidence in case at hand); *Commonwealth v. Bright*, 420 A.2d 714 ([Pa. Super.] 1980) (defendant could not impeach police officer with potential disciplinary action for excessive use of force by different officer since that cross-examination had no relationship to case in question); *see also Commonwealth v. Guilford*, 861 A.2d 365, 369 (Pa. Super. 2004) (quoting *Bright*, [420 A.2d] at 716) ("a witness may not be contradicted on 'collateral' matters, ... and a collateral matter is one which has no relationship to the case at trial.").

*Commonwealth v. Bozyk*, 987 A.2d 753, 757 (Pa. Super. 2009).

Instantly, the trial court concluded:

Based upon the court's *in camera* review of the [Detective Walker's personnel file], and following the argument of counsel, the court concludes that the facts detailed in Detective Walker's file are "unrelated to the present matter and irrelevant." The alleged conduct by Detective Walker outlined in the file does not have any direct relationship to his conduct in the investigation in this case. No part of the file, nor any other evidence, indicates

- 23 -

that any of Detective Walker's prior behavior "is in some way related to [Appellant's] underlying criminal charges and establishes a motive to fabricate." As no nexus exists between the conduct alleged in Detective Walker's personnel file and the facts of the instant case, it is irrelevant pursuant to Pa.R.E. 401 and the Commonwealth's motion to exclude must be granted.

Order, 7/10/17, at n.1, 4.

As indicated above, the parties had an opportunity to review Detective Walker's personnel file *in camera*. Appellant also had a full and fair opportunity to cross-examine Officer Rychlak and Sergeant Irons regarding the alleged flaws in their investigations into the complainant's allegations. Furthermore, Appellant's identity as the alleged perpetrator of the assault was not in dispute. The primary issue at trial was the credibility of the complainant's testimony against Appellant's testimony regarding the events inside the garage and, in particular, between the two cars.

Under these circumstances, we agree with the trial court's conclusion that Appellant's proffer was not relevant. Appellant does not show how any specific instance of the Detective Walker's mistreatment of minorities related to the investigation or Appellant's treatment as a suspect in this case. **See Bozyk**, 987 A.2d at 757. Moreover, Appellant does not establish a nexus between the police investigation and a fair determination of the credibility of the complainant's testimony. **See id.** Therefore, Appellant's proffer based on Detective Walker's alleged misconduct was too speculative, and we find no

abuse of discretion in the trial court's ruling.[5]  *See Rosser*, 135 A.3d at 1087-88; *Kane*, 188 A.3d at 1229.

In his third issue, Appellant claims that the trial court erred in excluding evidence that Ms. Doherty, the independent witness, previously filed a police report alleging she was sexually assaulted.  Appellant insists Ms. Doherty was the first person to describe the incident as a "rape."  Appellant's Brief at 20. As at trial, Appellant argues that Ms. Doherty misunderstood the situation in the parking garage, tainted the complainant's recollection of the incident, and triggered the faulty police investigation into the complainant's allegations of a sexual assault.

Appellant now contends that "[d]ocumented police reports, made to another law enforcement agency, substantiate that during the same academic year, M[s.] Doherty filed a prior, unfounded rape allegation."  *Id.*  Appellant compares the need to cross-examine Ms. Doherty to the need to impeach a complainant's testimony with evidence of a prior false report.  *Id.* (citing *Commonwealth v. Wall*, 606 A.2d 449 (Pa. Super. 1992)).  Appellant further asserts that he was entitled to call the officers who investigated Ms. Doherty's prior report to demonstrate that her report was unfounded.

---

[5] To the extent Appellant raises a *Brady* claim based on the Commonwealth's alleged misrepresentations regarding Detective Walker's departure from the West Chester University Police Department, we agree with the trial court that this claim was not preserved in the trial court.  We add, however, that Appellant does not contest the trial court's determination that he had an adequate opportunity to review Detective Walker's personnel file *in camera* before trial.

Instantly, the trial court addressed this issue as follows:

Following exhaustive research, the court is unable to locate any case law that opines upon the relevance of possible bias on the part of an eyewitness due to being a prior victim of a crime, not to mention the same crime as the accused. However, based upon the general rules of relevance, evidence of Ms. Doherty's prior alleged assault and her failure to press charges is not relevant to the determination of this case. . . . The only possible relevance is an as-yet unsupported inference that Ms. Doherty's prior experiences must have clouded her judgment in assessing what she saw in the garage that night. The details of Ms. Doherty's prior incident, or whether or not she chose to prosecute the case, do not have a tendency to prove [Appellant]'s guilt or innocence in this case. . . . Assuming *arguendo* that Ms. Doherty's prior alleged assault is relevant and creates a bias or motive to fabricate, its probative value is outweighed by its danger of misleading the jury. Admitting evidence of the prior incident creates the risk of a trial within a trial, wherein Ms. Doherty's conduct seven months prior to this incident becomes the focus of the jury's attention.

Order at n.1, 4-5.

Appellant, for the first time on appeal, suggests he was entitled to call the officers who investigated Ms. Doherty's prior report that she was sexually assaulted. However, Appellant has failed to develop any record to suggest that the officers would testify that Ms. Doherty's prior report was, in fact, false or unfounded. Therefore, Appellant failed to demonstrate that his proffer was relevant to impeach Ms. Doherty's testimony.

In any event, following our review of the record, the trial court was entitled to find that Appellant's proffer was irrelevant because Appellant only established that Ms. Doherty's prior sexual assault allegation did not give rise to a prosecution. **See** Order at n.1, 4; **Gill**, 206 A.3d at 466-67. We also find

no abuse of discretion in the trial court's balancing of the possibility of confusing the jury against the relevance of Appellant's proffer and Appellant's right to confront Ms. Doherty. **See** Pa.R.E. 402, 403; **Kane**, 188 A.3d at 1229. Accordingly, Appellant's issue fails. **See Rosser**, 135 A.3d at 1087-88; **Kane**, 188 A.3d at 1229.

In his last issue, Appellant claims that the trial court erred in ordering restitution to replace the complainant's phone. Appellant emphasizes that he was acquitted of theft, and his convictions for guilty of attempted rape and indecent assault did not relate to an unlawful taking of the complainant's phone. He further suggests that the trial court erred in failing to consider Appellant's ability to pay.

It is well settled that a challenge to the legality of a sentence raises a question of law. **Commonwealth v. Smith**, 956 A.2d 1029, 1033 (Pa. Super. 2008) (*en banc*). In reviewing this type of claim, our standard of review is *de novo* and our scope of review is plenary. **Commonwealth v. Childs**, 63 A.3d 323, 325 (Pa. Super. 2013). "An illegal sentence must be vacated[.]" **Commonwealth v. Ramos**, 197 A.3d 766, 769 (Pa. Super. 2018) (citation and quotation marks omitted).

Section 1106 of the Crimes Code governs the imposition of restitution as part of a sentence and provides, in relevant part:

**§ 1106. Restitution for injuries to person or property**

**(a) General rule.**—Upon conviction for any crime wherein:

(1) property has been stolen, converted or otherwise unlawfully obtained, **or its value substantially decreased as a direct result of the crime** . . . .

\* \* \*

**(c) Mandatory restitution.—**

(1) The court shall order full restitution:

(i) Regardless of the current financial resources of the defendant, so as to provide the victim with the fullest compensation for the loss. . . .

18 Pa.C.S. § 1106(a)(1), (c)(1)(i). This Court has stated that Section 1106 "applies only for those crimes to property or person where there has been a loss that flows from the conduct which forms the basis of the crime for which a defendant is held criminally accountable." *Commonwealth v. Zrncic*, 167 A.3d 149, 152 (Pa. Super. 2017) (citation and quotation marks omitted).

In *Commonwealth v. Barger*, 956 A.2d 458 (Pa. Super. 2008) (*en banc*), the defendant was charged with numerous sexual offenses and harassment after the complainant reported that he raped the complainant on her family's couch. *Barger*, 956 A.2d at 460. A jury acquitted the defendant of all charges and the trial court separately found the defendant guilty of harassment based on evidence that the defendant slapped the complainant. *Id.* At sentencing, the trial court ordered defendant to pay restitution for the replacement of the couch. *Id.*

The *Barger* Court vacated the imposition of restitution and reasoned as follows:

The trial court convicted [the defendant] of the offense of harassment for slapping [the complainant]. [The complainant]

- 28 -

testified at trial that the couch was replaced because "[that was] where I was raped and we didn't want that in my house." Even assuming that there was a loss of property within the meaning of Section 1106, there was no direct nexus between the crime for which [the defendant] was convicted and the loss of the couch, as Section 1106 requires. Accordingly, Section 1106 provided no authority to the trial court to include restitution for the couch in [the defendant's] sentence. Because the trial court sentenced [the defendant] to make restitution without the statutory authority to do so, we hold that the restitution portion of [the defendant's] sentence is illegal. "An illegal sentence must be vacated."

*Id.* at 465 (citations omitted).

In ***Zrncic***, the defendant had a sexual relationship with the fifteen–year-old complainant, whom he contacted both in person and electronically. ***Zrncic***, 167 A.3d at 151. The defendant was initially charged with involuntary deviate sexual intercourse, unlawful contact with a minor, aggravated indecent assault, corruption of minors, and indecent assault. ***Id.*** As part of the investigation, the police seized the complainant's laptop computer. ***Id.*** It was undisputed that the police took the computer to investigate the defendant's unlawful contact with the complainant, but the computer did not contain evidence related to aggravated indecent assault. ***Id.*** at 152.

The defendant ultimately pled guilty to one count of aggravated indecent assault, and the remaining charges, including the count of unlawful contact, were *nolle prossed*. ***Id.*** at 151. As part of the sentence, the trial court ordered the defendant to pay $1,038.77 to the complainant's mother for the replacement of the complainant's computer. ***Id.*** The trial court suggested, in part, that restitution for the computer was proper because the computer

contained evidence related to the defendant's unlawful contact with the complainant and the defendant. *Id.* at 153. The trial court further suggested that, but for the defendant's favorable plea agreement, the defendant would have faced charges of unlawful contact. *Id.*

On appeal, the *Zrncic* Court vacated the restitution for the computer. *Id.* at 150, 153. The Court concluded that the loss of the computer did not flow from the crime for which the defendant was convicted, reasoning that

> the legislature does not authorize a trial court to impose restitution based only on the trial court's sympathies for the victim. Rather, Section 1106 requires a "direct nexus" between the loss claimed and the crime "for which [the defendant] was convicted[.]"
>
> Nor are we persuaded by the trial court's conclusion that a "direct causal connection" exists between the loss of the laptop and the charge of aggravated indecent assault because "[the defendant] was initially charged with unlawful contact with a minor, and but for his plea agreement he would still have been faced with that charge[.]" Being "faced with [a] charge" is insufficient to justify an award of restitution, and the trial court may not award restitution based on its conjecture that a jury would have found [the defendant] guilty of the charge had the case gone to trial. Whatever may have happened in the instant case in the absence of a plea agreement, [the defendant] was not convicted of unlawful contact with a minor.

*Id.* at 153 (citations omitted) (some capitalization omitted)

Initially, we note that Appellant's argument that the trial court failed to consider his ability to pay when imposing restitution is meritless. *See* 18 Pa.C.S. § 1106(c)(1); *Commonwealth v. Rush*, 909 A.2d 805, 811 (Pa. Super. 2006). Therefore, we focus on Appellant's claim that the jury's verdict did not authorize restitution for the complainant's phone.

Instantly, the trial court concluded that the imposition of restitution under Section 1106(a)(1) was proper. The trial court reasoned:

The [complainant] provided her cell[]phone to [Appellant] while they were in the parking garage, and it remained in his possession during the attempted rape. [Appellant] then discarded it when he fled the scene, and a third party later found it, damaged beyond repair, on the ground near the garage. While [Appellant][ was found not guilty of theft by unlawful taking, 18 Pa.C.S. § 3921(a), that verdict only removes [Appellant]'s culpability for **intending to deprive** the [complainant] of cell[]phone. The fact that [Appellant] discarded the cell[]phone immediately after leaving the garage certainly may imply a lack of intent to deprive her of it. However, the fact remains that [Appellant] possessed the phone, his conduct led its damage.

Trial Ct. Op. at 7 (citations and some capitalization omitted) (emphasis in original).

Following our review, we conclude that the trial court erred in imposing restitution for the replacement of the complainant's phone. The jury acquitted Appellant for the theft of the phone. *See Zrncic*, 167 A.3d at 151; *Barger*, 956 A.2d at 465. The Commonwealth did not separately charge Appellant with damaging the complainant's phone. Moreover, there was no evidence suggesting that that the phone was damaged during the attempted rape or indecent assault.

Therefore, we are constrained to conclude that the record does not support the trial court's finding of a direct connection between the crimes for which Appellant was convicted and the damage Appellant caused to the complainant's phone. Accordingly, the trial court's imposition of restitution for the replacement of the phone was not authorized by Section 1106(a)(1),

and we must vacate that portion of the judgment of sentence as an illegal sentence. **See Barger**, 956 A.2d at 465. Because vacating the restitution order does not affect the overall sentencing scheme of the trial court, there is no need to remand this case. **See id.**

Judgment of sentence affirmed in part and vacated in part as to restitution only. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/17/19