**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**William BARGER, Appellant.**

Superior Court of Pennsylvania.

Argued May 15, 2008.
Filed Aug. 29, 2008.

Scott McCabe, York, for appellant.

Justin F. Kobeski, Asst. Dist. Atty., York, for the Com., appellee.

BEFORE: FORD ELLIOTT, P.J., MUSMANNO, LALLY–GREEN, BENDER, BOWES, PANELLA, DONOHUE, SHOGAN, and ALLEN, JJ.

OPINION BY LALLY–GREEN, J.:

¶ 1 Appellant, William Barger, appeals from the judgment of sentence entered on August 25, 2006. We affirm in part and vacate in part.

¶ 2 The relevant facts and procedural history may be summarized as follows. In July of 2004, Appellant went to a pool party at the home of E.G., his 13–year–old niece by marriage. Some six months later, E.G. told her parents and the police that on the day of the party, Appellant sexually assaulted her.

¶ 3 On September 13, 2005, Appellant was charged with rape, statutory sexual assault, sexual assault, indecent assault, corruption of minors, terroristic threats, and harassment.[1] The informations the Commonwealth filed against Appellant on

---

1. A person is guilty of rape when he "engages in sexual intercourse with a complainant ... [b]y forcible compulsion [or][b]y threat of forcible compulsion that would prevent resistance by a person of reasonable resolution." 18 Pa.C.S.A. § 3121(a)(1), (2). "Sexual intercourse" includes "[i]n addition to its ordinary meaning ... intercourse per os or per anus, with some penetration however slight; emission is not required." 18 Pa.C.S.A. § 3101.

A person commits statutory sexual assault "when that person engages in sexual intercourse with a complainant under the age of 16 years and that person is four or more years older than the complainant and the complainant and the person are not married to each other." 18 Pa.C.S.A. § 3122.1.

A person commits sexual assault "when that person engages in sexual intercourse or deviate sexual intercourse with a complainant without the complainant's consent." 18 Pa. C.S.A. § 3124.1.

A person is guilty of indecent assault if the person:

has indecent contact with the complainant, causes the complainant to have indecent contact with the person or intentionally causes the complainant to come into contact with seminal fluid, urine or feces for the purpose of arousing sexual desire in the person or the complainant and (1) the person does so without the complainant's consent; (2) the person does so by forcible compulsion; (3) the person does so by threat of forcible compulsion that would prevent resistance by a person of reasonable resolution ... or (8) the complainant is less than 16 years of age and the person is

the felony and misdemeanor charges were premised on allegations of sexual intercourse (penis to vagina) between Appellant and E.G. The information the Commonwealth filed against him on the harassment charge was premised on allegations that Appellant struck and restrained E.G.

¶ 4 On August 23, 2006, Appellant's case proceeded to trial. The felonies and misdemeanor charges were tried to a jury; the harassment summary offense was tried to the trial judge. Both E.G. and Appellant testified. E.G. testified that during the party, Appellant followed her into the kitchen of her home from the pool area; grabbed her by the arm; slapped her in the face; dragged her toward the family room couch; slapped her again; held her down on the couch; removed her bathing suit; inserted his penis into her vagina; and threatened to kill her, if she disclosed the rape. Appellant testified that none of the events that E.G. recounted took place. In addition, Appellant testified that because of a medical condition, he was impotent and required the use of a mechanical device to engage in sexual intercourse. According to Appellant, he kept the device at home and never took it to E.G.'s home.

¶ 5 On August 25, 2006, the jury acquitted Appellant of all of the felony and misdemeanor charges. The trial court convicted Appellant of harassment. The trial court found that the Commonwealth proved that Appellant slapped E.G. twice. The trial court sentenced Appellant to a prison term of 90 days, a fine of $300.00, and restitution in the amount of $600.00, for the family room couch that was replaced in E.G.'s home.

¶ 6 Appellant appealed. Appellant raised whether the evidence was sufficient to support his conviction for harassment, given that E.G.'s testimony was not believed by the jury and was not corroborated. Appellant also raised whether the trial court's verdict of guilty on the harassment charge was inconsistent with the jury's verdict of not guilty on all the other offenses that stemmed from the same alleged course of conduct.[2]

¶ 7 A panel of this Court affirmed Appellant's judgment of sentence. We concluded that E.G.'s testimony about the slapping was sufficient evidence to support Appellant's harassment conviction. We also concluded that Appellant's conviction for harassment could not be disturbed, even if the respective verdicts of the jury and the trial court were inconsistent. In doing so, we relied on our prior decisions in *Commonwealth v. Wharton,* 406 Pa.Super. 430, 594 A.2d 696, 699 (1991), and *Commonwealth v. Yachymiak,* 351 Pa.Super. 361, 505 A.2d 1024 (1986). In these cases, we held that inconsistent verdicts

four or more years older than the complainant and the complainant and the person are not married to each other.
18 Pa.C.S.A. § 3126(a)(1), (2), (3), (8).

An individual commits the offense of corruption of minors, where he or she, being at least 18 years of age, "by any act corrupts or tends to corrupt the morals of any minor less than 18 years of age." 18 Pa.C.S.A. § 6301(a)(1).

A person commits the crime of terroristic threats if the person "communicates, either directly or indirectly, a threat to: (1) commit any crime of violence with intent to terrorize another[.]" 18 Pa.C.S.A. § 2706(a)(1).

A person commits the offense of harassment "when, with intent to harass, annoy or alarm another, the person: (1) strikes, shoves, kicks or otherwise subjects the other person to physical contact, or attempts or threatens to do the same[.]" 18 Pa.C.S.A. § 2709(1).

2. On September 26, 2006, the trial court ordered Appellant to file a Pa.R.A.P.1925(b) statement within 14 days. On October 10, 2006, Appellant filed his Rule 1925(b) statement, raising these two issues. On November 2, 2006, the trial court filed a Rule 1925(a) opinion.

are permissible in Pennsylvania. We reasoned that: an acquittal cannot be interpreted as a specific finding in relation to some of the evidence presented; an acquittal may represent the jury's exercise of its historic power of lenity; and a contrary rule would abrogate the criminal procedural rules that empower a judge to determine all questions of law and fact as to summary offenses. *Wharton*, 594 A.2d at 698–699; *Yachymiak*, 505 A.2d at 1026–1027.[3]

¶ 8 Appellant filed an application for reargument. Appellant requested reconsideration of our decision to uphold his conviction for harassment. Appellant did not ask that we revisit our tolerance of inconsistent verdicts or that we overrule *Wharton* and *Yachymiak*. Rather, Appellant asserted that the facts of his case raised concerns that went beyond a situation of mere inconsistency between verdicts. Appellant claimed that since the jury's verdicts of acquittal demonstrated that the jury did not believe any of E.G.'s testimony, the trial court's conviction on the harassment charge may raise double jeopardy or collateral estoppel issues. Appellant also requested that we reconsider his challenge to the sufficiency of the evidence on his harassment conviction. On February 6, 2008, we granted *en banc* review, and accordingly, withdrew our November 28, 2007 decision.

¶ 9 On reargument, Appellant raises one issue:

> In a bifurcated misdemeanor/felony and summary trial, the jury determined that the Commonwealth's sole witness was not credible, completely repudiated her allegations involving the same conduct, and acquitted the defendant of all misdemeanor and felony offenses. Pursuant to the doctrine of collateral estoppel under the double jeopardy clauses of the federal and state constitutions, the issue of this single witness' credibility was decided adverse to the Commonwealth, and it was thereby precluded from relitigating that issue in the non-jury trial on the summary [h]arassment offense. Given that no additional evidence was presented to support the trial court's verdict, the evidence was insufficient to support the trial court's finding the defendant guilty of the summary offense of [h]arassment.

Appellant's Brief at 4.

¶ 10 Appellant's issue is a pure question of law. Therefore, our standard of review is *de novo*, and our scope of review is plenary. *Commonwealth v. States*, 595 Pa. 453, 938 A.2d 1016 (2007).

¶ 11 The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution is "a proscription against twice placing an individual in jeopardy of life or limb." *Id.* at 1019. *See* U.S. Const. Amend. V. The rights of double jeopardy

---

**3.** In our opinion, we noted that *Wharton* and *Yachymiak* rejected the trial court's contrary view of inconsistent verdicts in *Commonwealth v. Bittinger*, 25 Pa.D. & C.3d 627 (Com.Pl.Somerset County 1982). In *Bittinger*, following a consolidated jury/bench trial, the defendant was acquitted of assault by the jury, but convicted of harassment by the trial court. The defendant filed a motion in arrest of judgment on the conviction. The trial court granted the motion, based on its conclusion that the defendant's acquittal and conviction were logically inconsistent. The trial court also adopted a rule that in consolidated jury/nonjury cases, the trial judge must defer to the jury's findings on common issues. The trial court stated that rule was designed to protect defendants from inconsistent verdicts, which it viewed as fundamentally unfair and possibly constituting "a double jeopardy of sorts" or "a matter of collateral estoppel." *Id.* at 634–644. In *Yachymiak*, based on our decision that inconsistent verdicts are to be left alone, we declined to adopt the trial court's rule. *Yachymiak*, 505 A.2d at 1026–1027.

have been described as "freedom from the harassment of successive trials and the prohibition against double punishment." *States*, 938 A.2d at 1016 (citation omitted). The Double Jeopardy Clause was made applicable to the states through the Fourteenth Amendment. *Id.*

¶ 12 Our state constitution also affords double jeopardy protections. *Id. See* Pa. Const. Art. 1, § 10. The double jeopardy protections afforded by the Pennsylvania Constitution are coextensive with those federal in origin. *States*, 938 A.2d at 1016.

¶ 13 In *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), the United States Supreme Court determined that collateral estoppel principles apply in criminal cases as a subpart of the Double Jeopardy Clause. Our Pennsylvania Supreme Court has also so determined in *Commonwealth v. Hude*, 492 Pa. 600, 425 A.2d 313, 318 (1980) (plurality).[4] Collateral estoppel for double jeopardy purposes does not automatically bar subsequent prosecutions, but it does bar redetermination in a second prosecution of those issues necessarily determined between the parties in the first proceeding. *Id.* at 319.

¶ 14 Our Supreme Court has acknowledged that "in the criminal law arena, the difficulty in applying collateral estoppel typically lies in deciding whether or to what extent [a general verdict of] acquittal can be interpreted in a manner that affects future proceedings, that is, whether it 'reflects a definitive finding respecting a material element of the prosecution's subsequent case.'" *States*, 938 A.2d at 1021 (citation omitted). The Court has adopted the three-part federal test of *Ashe* for determining whether collateral estoppel applies to an issue. That test consists of the following inquiries:

1) an identification of the issues in the two actions for the purpose of determining whether the issues are sufficiently similar and sufficiently material in both actions to justify invoking the doctrine;

2) an examination of the record of the prior case to decide whether the issue was "litigated" in the first case; and

3) an examination of the record of the prior proceeding to ascertain whether the issue was necessarily decided in the first case.

*Id.* (citation omitted). The approach we are to take in engaging in these inquiries is a practical one, with a view to all the circumstances. *Hude*, 425 A.2d at 319. We are to examine the record in the prior proceeding, the pleadings, the evidence, the charge, and any other relevant matter to ascertain:

whether the fact-finder, in rendering an acquittal in a prior proceeding, "could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." If the verdict must have been based on resolution of an issue in a manner favorable to the defendant with respect to a remaining charge, the Commonwealth is precluded from attempting to relitigate that issue in an effort to resolve it in a contrary way.

*States*, 938 A.2d at 1021 (citations omitted). *See Hude*, 425 A.2d at 319–320.

¶ 15 On reargument, Appellant challenges his conviction for harassment under collateral estoppel principles. Appellant

---

4. We note that the Supreme Court has stated that even though *Hude* was a plurality opinion, *Hude's* analysis of the collateral estoppel principles embodied in the Double Jeopardy Clauses of the United States and Pennsylvania constitutions has been accepted by a majority of the members of the Court. *Commonwealth v. Smith*, 518 Pa. 15, 540 A.2d 246, 250 (1988).

argues that all of the charges brought against him rested on the same evidence and, ultimately, on E.G.'s credibility. According to Appellant, the jury acquitted him of the felony and misdemeanor charges because the jury did not credit any of E.G.'s testimony. This determination precluded the trial court from considering whether E.G. was credible in any regard when adjudicating the harassment charge, including E.G.'s testimony that Appellant slapped her. Therefore, Appellant's conviction for harassment, which was premised on the trial court's finding that he slapped E.G. twice, must be reversed. Appellant relies on *Hude* for support.

¶ 16 In *Hude*, the defendant, Manfred Hude, was charged with possession and delivery of marijuana and corruption of a minor.[5] The charges arose out of three alleged sales of marijuana by Hude to Barry Hagemus. Hude was brought to trial. The Commonwealth's only witness was Hagemus. Hagemus' testimony consisted of a full explication of Hude's drug dealing and the three drug transactions between him and Hude. Hude took the stand in his own defense. In answer to a question posed by his counsel, Hude stated that he never dealt drugs. The jury acquitted Hude of all charges.

¶ 17 Subsequently, the Commonwealth charged Hude with perjury for stating at his trial that he did not sell drugs. At Hude's perjury trial, the Commonwealth again called Hagemus, who testified to the alleged purchases of marijuana from Hude. Hude again testified that he had no involvement with drugs. The trial judge, sitting without a jury, found Hude guilty of perjury. Hude appealed the perjury conviction, contending that the perjury prosecution violated the principles of collateral

estoppel. This Court rejected Hude's claim and affirmed his judgment of sentence. The Supreme Court granted *allocatur*.

¶ 18 After scrutinizing the record in the way *Ashe* requires, the plurality noted that Hude's first trial had been a battle of credibility; that is, Hagemus testified to Hude's participation in the drug transactions and Hude denied all involvement. Thus, for purposes of analyzing Hude's collateral estoppel claim, the plurality determined that the sole issue actually litigated at Hude's trial was Hagemus' credibility when he testified that Hude trafficked in drugs. *Id.* at 320–321. The plurality then noted that the jury decided the issue of Hagemus' credibility in Hude's favor and emphasized that the jury determined that Hagemus lacked truthfulness in all respects. *Id.* at 323. In this regard, the plurality rejected the Commonwealth's argument that the jury's acquittal was not a general repudiation of Hagemus' testimony, but merely the jury's disbelief that Hude sold drugs on the specific dates set forth in the indictments. The plurality could find nothing in the record to suggest that the jury rejected only that Hude did not sell drugs on three separate occasions, but accepted that Hude dealt in drugs. *Hude*, 425 A.2d at 323–324. Finally, the plurality concluded that in view of the testimony presented, the jury's rejection of Hagemus' testimony was the only rational explanation for its verdict of acquittal. *Id.* at 324. Viewing the perjury action as nothing more than a thinly veiled attempt to retry the issue of Hagemus' credibility, the plurality determined that the issue had already been litigated and collateral estoppel prevented its relit-

---

**5.** *Hude* was a consolidated appeal. The appeal brought by Manfred Hude was consolidated with an appeal brought by Dennis Klinger. Appellant relies on the plurality's analysis in Manfred Hude's appeal. *Hude*, 425 A.2d at 321–324.

igation. *Id.* at 322, 324. Accordingly, this Court's order was reversed, the judgment of sentence was vacated, and Hude was discharged. *Id.* at 324.

¶ 19 Our careful review of the record reveals that Appellant's reliance on *Hude* is misplaced. In *Hude,* a premise on which the plurality's decision rested was the conclusion that the jury's repudiation of Hagemus' credibility and testimony on the drug charges must have been complete. Here, this is simply not the case. It is fundamental that a jury is free to believe all, some, or none of the testimony presented by a witness. *Commonwealth v. Geiger,* 944 A.2d 85, 90 (Pa.Super.2008).

■ ¶ 20 Given the elements of the charges the jury considered, the Commonwealth's theory of prosecution, and the evidence presented at Appellant's trial, we cannot conclude that the jury's acquittal of Appellant of rape, statutory sexual assault, sexual assault, indecent assault, corruption of minors, and terroristic threats was necessarily based on the jury's rejection of everything that E.G. testified to at trial. In other words, a rational jury could have acquitted Appellant of those charges on other bases. For example, the jury could have found that Appellant followed E.G. into the kitchen; grabbed her by the arm; slapped her in the face; dragged her toward the family room couch; slapped her again; held her down on the couch; and removed her bathing suit, but did not insert his penis into her vagina or threaten to kill her for disclosing the rape. Thus, we cannot conclude that the jury's acquittal of Appellant must have reflected the jury's determination that none of E.G.'s testimony was to be given credit, including her testimony that Appellant slapped her twice. This means that Appellant cannot satisfy the fundamental requirement for the application of collateral estoppel under *Ashe*—that the jury's verdict of acquittal was necessarily based on a resolution of the issue he asserts the trial judge was precluded from considering in a manner that was favorable to him. Therefore, Appellant's collateral estoppel claim on reargument fails.[6]

■ ¶ 21 It remains for us to consider, however, whether the trial court properly sentenced Appellant to provide restitution for the couch replaced in E.G.'s home. Our question regarding the restitution portion of Appellant's sentence concerns the trial court's authority to impose it. Thus, our question concerns the legality of Appellant's sentence. *See In the Interest of M.W.,* 555 Pa. 505, 725 A.2d 729, 731 n. 4 (1999) (explaining that a challenge directed to the trial court's authority to impose restitution concerns the legality of the sentence, while a challenge that raises whether the restitution amount is excessive involves a discretionary aspect of sentencing). The legality of a sentence is a non-waivable question that may be raised at any time and *sua sponte* by this Court. *Commonwealth v. Brown,* 2008 PA Super 156, ¶ 7, 956 A.2d 992 (*en banc*).

¶ 22 The Supreme Court has instructed that a sentence of restitution must be based upon statutory authority. *Commonwealth v. Harner,* 533 Pa. 14, 617 A.2d 702,

---

6. In light of our disposition of the issue Appellant raised on reargument, we do not address whether the principles of collateral estoppel apply where, as here, there was only one prosecution, not two prosecutions or the prospect of a second prosecution. *See Copening v. United States,* 353 A.2d 305 (D.C.App. 1976) (concluding that the collateral estoppel principles enunciated in *Ashe* should not be extended to govern the situation in which several criminal charges against the same defendant were allocated between concurrent, as opposed to successive, triers of fact). In addition, we need not re-affirm or repudiate our decisions in *Wharton* and *Yachymiak.*

704 (1992). Section 1106 of the Crimes Code provides this authority to the trial courts. In relevant part, Section 1106 states that a sentence of restitution may be imposed "for any crime wherein property has been stolen, converted or otherwise unlawfully obtained, or its value substantially decreased as a direct result of the crime." 18 Pa.C.S.A. § 1106. The Supreme Court has held that Section 1106's language "is clear on its face and applies only for those crimes to property or person where there has been a loss that flows from the conduct which forms the basis of the crime for which a defendant is held criminally accountable." *Harner*, 617 A.2d at 706. Moreover, we have held that because of Section 1106's words, restitution is a proper sentence under the Crimes Code only if there is a "direct causal connection between the crime and the loss." *Commonwealth v. Harriott*, 919 A.2d 234 (Pa.Super.2007), *appeal denied*, 594 Pa. 686, 934 A.2d 72 (2007).

¶ 23 Our review of the record reveals that Section 1106 was inapplicable. The trial court convicted Appellant of the offense of harassment for slapping E.G. E.G. testified at trial that the couch was replaced because "[that was] where I was raped and we didn't want that in my house." N.T., 8/23/05, at 114. Even assuming that there was a loss of property within the meaning of Section 1106, there was no direct nexus between the crime for which Appellant was convicted and the loss of the couch, as Section 1106 requires. Accordingly, Section 1106 provided no authority to the trial court to include restitution for the couch in Appellant's sentence. Because the trial court sentenced Appellant to make restitution without the statutory authority to do so, we hold that the restitution portion of Appellant's sentence is illegal. "An illegal sentence must be vacated." *Commonwealth v. Kinney*, 777 A.2d 492, 494 (Pa.Super.2001). Accordingly, we vacate Appellant's sentence of restitution in the amount of $600.00.

¶ 24 Judgment of sentence imposing restitution is vacated. Judgment of sentence in all other respects is affirmed. Jurisdiction relinquished.

¶ 25 BOWES, J., concurs in the result.

¶ 26 BENDER, J., notes his dissent.