J-S67025-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| MATTHEW DAVIDOFF | |
| Appellant | No. 386 MDA 2015 |

Appeal from the Order January 30, 2015
In the Court of Common Pleas of Centre County
Criminal Division at No(s): CP-14-CR-0000707-2014

BEFORE:  BOWES, J., PANELLA, J., and PLATT, J.[*]

MEMORANDUM BY PANELLA, J.                    **FILED MARCH 01, 2016**

Appellant, Matthew Davidoff, appeals from the order denying his motion to modify restitution.[1]  Davidoff does not contest the computation of restitution, but rather whether the Commonwealth presented sufficient evidence of a causal nexus between his conduct and injury suffered by the victim.  We conclude that the explicit reasoning employed by the trial court in setting restitution is erroneous, and therefore reverse and remand.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] Though Davidoff's motion is entitled "Motion to Determine Restitution," the trial court included restitution of $41,103.95 when it imposed sentence.  **See** N.T., Sentencing, 7/17/14, at 6.  The procedure employed therefore complies with the requirements of 18 Pa.C.S.A. § 1106(c).  **See Commonwealth v. Dietrich**, 970 A.2d 1131 (Pa. 2009).

Davidoff pled, pursuant to a plea agreement with the Commonwealth, no contest to a charge of simple assault. The factual predicate for this plea was set forth as follows.

> Your Honor, the allegations are that Matthew was here in State College in Centre County with his entire family for a wedding of a family member. They were at the Phyrst bar when the altercation broke out. Matthew's side and his family's side of the case is it was the bouncers who precipitated the altercation. The bouncers, of course, said that they were trying to get Matthew out of the bar, he resisted, and an altercation broke out.
>
> In the course of the altercation it was alleged by one of the bouncers that he was pushed, fell down, hurt his knee. He had a preexisting knee injury but when he fell down he reinjured his knee and created a significant medical expense. I believe the Commonwealth is saying up to $40,000. But the evidence is that Matthew had nothing to do with that injury and the evidence would be from our side had we gone to trial that his family members only came to his assistance because he was being beaten by three or four bar employees.
>
> As a result that charge ultimately was filed against Matthew and his cousin, who is here today also, but the family and Matthew have presented they have a self-defense issue. This was compromised because the Commonwealth has made it clear that if we do not resolve this case today they are contemplating adding an aggravated assault charge.

N.T., Sentencing, 7/17/14, at 4-5. When asked for any additions, the Commonwealth declined. *See id*., at 5. As part of the plea agreement, the Commonwealth agreed that the amount of restitution was subject to litigation at a subsequent hearing. *See id*., at 2.

At the subsequent hearing, the victim ("the Bouncer") testified as part of the Commonwealth's case-in-chief. He stated that he was working at the Phyrst near 2 a.m. on the morning in question when Davidoff approached

- 2 -

him and asked him to move. *See* N.T., Restitution Hearing, 11/17/14, at 5-6. When he informed Davidoff to wait while he performed his job, Davidoff "kind of shouldered me out of the way and walked towards the bar." *Id*., at 6.

The Bouncer followed Davidoff to the bar and indicated to the bartender that Davidoff was not to be served. *See id*. He then informed Davidoff that he was visibly intoxicated and that he had to leave the premises. *See id*., at 6-7. After Davidoff indicated that he would not leave, the Bouncer testified that

> I said, "No, it's time for you to go, start walking," and I put my hand up and he smacked my hand down. And that's when I looked at him again and said "Start walking." And he went, like, moved his hand up again and that's when I thought he was going to smack my hand so I grabbed his hand and pushed it, because I didn't know what exactly he was going to do with it, and that's when we engaged in our altercation of, like, a pushing shoving match.
>
> …
>
> And then we kind of almost grabbed each other at the same time. Like, I reached forward to grab him as he came forward to grab me. And that's when we got – I would say just more of like – I mean it wasn't no punches were thrown or anything like that.
>
> And by that time, we were right up against the bar and Zach, one of the other bouncers, came from the door and he came over. And as he came over, one of the fathers had also came over at the same time and pushed me from the side. I turned around, pushed him off of me, and then I felt like being choked from behind and it pulled me away from Zach and Mr. Davidoff.
>
> …

> I was being choked from behind [by Davidoff's cousin, Kelly Meenan]. I pulled his hands off. And as soon as I pulled his hands off, he kind of bear hugged me from behind, lower towards my waist. And at that time, I was trying to reach around to grab him and his head was right here around under my arm and I couldn't gain control. So, I started to pry his hands off from around my waist. Got his hands off my waist and then I felt an extreme, like, pressure in my back and shoulders like he had jumped on my back. And then as soon as that happened, we both just wiped out on the ground.
>
> …
>
> And when I went to stand up, I couldn't. Kind of looked at my leg, … I felt, like, an extreme pressure and pain around my knee.

*Id*., at 6-9.

On cross-examination, the Bouncer admitted that he was no longer in contact with Davidoff when the injury occurred. *See id*., at 14. In fact, the Bouncer testified that Davidoff's cousin, Kelly Meenan, had caused his injury. *See id*., at 14-15. On re-direct, the Bouncer testified that he did not fall due to his "pushing match" with Davidoff. *Id*., at 24. Several other witnesses testified, and although the particulars of their testimony varied, none offered a story that indicated Davidoff did anything other than push the Bouncer and refuse to leave.

After the hearing, but before a decision on the motion was rendered, the trial judge was removed from the case. Another judge was appointed to resolve this issue. The substitute judge—in his 2 paragraph discussion of the issue—observed that Davidoff had pled no contest to the charge of simple assault, and therefore had "agreed to be treated as if he caused

bodily injury to" the Bouncer, and therefore imposed restitution in the amount of $83,915.95. This timely appeal followed.

Davidoff raises several arguments, but we will address only one, as it is dispositive. Davidoff contends that the trial court erred in concluding that his *nolo contendere* plea precluded him from contesting that he had caused the injury suffered by the Bouncer. We agree.

Initially, we note that Davidoff pled no contest to a charge of simple assault. In the criminal information filed by the Commonwealth, Davidoff was alleged to have "attempt[ed] to cause or intentionally, knowingly or recklessly cause[d] bodily injury to another, to-wit: [the Bouncer.]" As set forth above, the factual predicate for Davidoff's no contest plea did not contain any reference that he had, or that the Commonwealth could prove, that he had, caused injury to anyone. Since the information includes the disjunctive "or," and Davidoff explicitly reserved the right to contest restitution, there is no indication in the record that Davidoff had conceded that he was the cause of the Bouncer's injury.

"[T]he determination as to whether the trial court imposed an illegal sentence is a question of law; our standard of review in cases dealing with questions of law is plenary." **Commonwealth v. Atanasio**, 997 A.2d 1181, 1183 (Pa. Super. 2010) (citation omitted). A sentence of restitution must be based upon statutory authority. **See Commonwealth v. Harner**, 617 A.2d 702, 704 (Pa. 1992). Mandatory restitution, as part of a defendant's

- 5 -

sentence, is authorized by 18 Pa.C.S.A. § 1106 and states, in relevant part, the following:

> § 1106. Restitution for injuries to person or property
>
> (a) General rule.—Upon conviction for any crime … wherein the victim suffered personal injury *directly resulting from the crime* the offender shall be sentenced to make restitution in addition to punished prescribed therefor.

18 Pa.C.S.A. § 1106(a) (emphasis added). The statute evidences the intent to provide the victim with the fullest compensation for his losses incurred as a *direct* result of the defendant's criminal conduct. ***See Commonwealth v. Burwell***, 58 A.3d 790, 794 (Pa. Super. 2012); ***Commonwealth v. Stradley***, 50 A.3d 769, 773 (Pa. Super. 2012).

The defendant is only responsible for restitution as to the "losses flowing from the conduct for which the defendant has been held criminally accountable." ***Commonwealth v. Cooper***, 466 A.2d 195, 197 (Pa. Super. 1983) (citations omitted); ***see also Harner***, 617 A.2d at 706. Furthermore, because of the explicit language in § 1106, restitution is a proper sentence under that the Crimes Code only if there is a "direct causal connection between the crime and the loss." ***Commonwealth v. Barger***, 956 A.2d 458, 465 (Pa. Super. 2008) (en banc) (citation omitted).

For instance, in ***Cooper***, we vacated the trial court's order that required the defendant to pay restitution for the costs of a victim's death borne by the victim's family because the defendant only pled guilty to leaving the scene of the accident and not was not found criminally

responsible for having struck the victim. **See** 466 A.2d at 197. Similarly, in **Barger**, we vacated a restitution order based upon the value of a couch that was allegedly lost due to conduct for which the defendant was not found criminally responsible. **See** 956 A.2d at 464-465.

"It is the Commonwealth's burden of proving its entitlement to restitution." **Atanasio**, 997 A.2d at 1183 (citation omitted). "Although it is mandatory under section 1106(c) to award full restitution, it is still necessary that the amount of the 'full restitution' be determined under the adversarial system with considerations of due process." **Id**. (citation omitted).

Here, Davidoff has presented a colorable argument and evidence that he was not directly responsible for the injury suffered by the Bouncer. The Commonwealth bore the burden of proving otherwise. It was error for the trial court to decide the issue based solely upon Davidoff's plea of no contest. We therefore reverse and remand.

Order reversed. Case remanded for proceedings consistent with this memorandum. Jurisdiction relinquished.

Judge Platt joins the memorandum.

Judge Bowes files a dissenting memorandum.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/1/2016