J-A22012-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DANIEL DAVID DELEON | : | |
| | : | |
| Appellant | : | No. 397 MDA 2020 |

Appeal from the Judgment of Sentence Entered July 19, 2019
In the Court of Common Pleas of Lancaster County Criminal Division at
No(s):  CP-36-CR-0004560-2017

BEFORE:  SHOGAN, J., STABILE, J., and MURRAY, J.

MEMORANDUM BY MURRAY, J.:                    **FILED OCTOBER 02, 2020**

Daniel David Deleon (Appellant) appeals from the judgment of sentence imposed after a jury convicted him of endangering the welfare of a child (EWOC) and recklessly endangering another person (REAP).[1]  Appellant does not challenge his convictions.  His claim is that the trial court erred by ordering him to pay restitution under the Crimes Code provision for injuries to person or property, 18 Pa.C.S.A. § 1106.  For the reasons that follow, we affirm.

On June 1, 2017, while in Appellant's care, C.W. (Child)[2] sustained "serious, permanent bodily injur[y], including severe brain and neurological damage."  Trial Court Opinion, 1/31/20, at 1.  Child's mother, Amanda

---

[1] 18 Pa.C.S.A. §§ 4304(a)(1) and 2705.

[2] Appellant is not Child's biological father.  N.T., 5/29/19, at 97.

Gotshall, left Child in Appellant's care while she went to the grocery store. N.T., 5/29/19, at 98. Upon exiting the grocery store, Ms. Gotshall saw that she had 18 missed calls from Appellant.[3] Ms. Gotshall called Appellant, who informed her that "something seems wrong with the baby," and asked Ms. Gotshall whether he should call 9-1-1. *Id.* at 99. Ms. Gotshall responded that she was on her way home and to "[l]et [her] come [home] before we end up calling an ambulance for something that is not an emergency." *Id.* After Ms. Gotshall arrived home and saw Child's condition, she immediately called 9-1-1. *Id.* at 100.

Child, who was five months old at the time, was taken to Hershey Medical Center. The Commonwealth's expert witness, Dr. Kent Hymel, related that Child was:

> completely limp or flaccid, unresponsive to pain, with pupils that were minimally reactive to light. He had episodic seizures. His breathing was compromised or inadequate to the point where [medical staff] decided to intubate him. He was also showing posturing of his body in a way that told [medical staff] that his brain was swelling and shifting dangerously within his skull causing severe compromise.

N.T., 5/29/19, at 299. Dr. Hymel testified that Child's injuries were consistent with being "violently shak[en]." *Id.* at 320. The Commonwealth emphasizes that Lancaster County Detective Kenneth Henry "determined that Appellant had sole and exclusive custody of [Child] at the time he was injured[, and]

---

[3] Ms. Gotshall testified that she does not get reception inside the grocery store. N.T., 5/29/19, at 98-99.

Appellant admitted to having sole and exclusive custody of [Child] at the time [he] 'became limp.'" Commonwealth's Brief at 6 (citations to notes of testimony omitted).

Appellant was charged with two counts of aggravated assault and one count each of EWOC and REAP. A four-day jury trial began on May 28, 2019. At the conclusion of trial, the jury acquitted Appellant of both counts of aggravated assault, but convicted him of EWOC and REAP. On July 19, 2019, the trial court sentenced Appellant to five years of county intermediate punishment, with the first nine months on house arrest, and two years of concurrent probation. Pertinently, the court ordered Appellant to pay restitution for Child's medical expenses in the amount of $459,150.26.

On July 25, 2019, Appellant filed a timely post-sentence motion challenging the restitution. Appellant averred that the court "improperly sentenced [Appellant] to pay $459,150.26 in restitution when the jury specifically found [Appellant] not guilty of causing [Child's] injuries." Post-Sentence Motion, 7/25/19, at 2 ¶ 9 (unpaginated).

Appellant's motion was denied by operation of law on February 4, 2020.[4] This appeal followed. Both Appellant and the trial court have complied with Rule of Appellate Procedure 1925.

---

[4] Appellant filed a timely post-sentence motion on July 25, 2019. The trial court had 120 days to decide the post-sentence motion, but when it failed to decide the motion within that period, the motion was deemed denied by operation of law on November 22, 2019. *See* Pa.R.Crim.P. 720(B)(3)(a).

Appellant raises a single issue for our review:

Whether the [t]rial [c]ourt erred in ordering Appellant to pay restitution pursuant to 18 Pa.C.S.A. § 1106(a) in the amount of $459,150.26 for medical bills incurred by the injured child when Appellant was found not guilty of directly causing the injuries that required medical attention.

Appellant's Brief at 4.

Appellant's issue presents a pure question of law, subject to plenary and *de novo* review. ***Commonwealth v. Brown***, 956 A.2d 992, 994 (Pa. Super. 2008) (*en banc*).

Instantly, the trial court imposed restitution as part of Appellant's sentence, which is distinct from restitution imposed as a condition of probation pursuant to 42 Pa.C.S.A. § 9754. As discussed ***infra***, when restitution is imposed as part of a sentence, there must be a direct nexus between the criminal conduct and the victim's loss. ***Commonwealth v. Popow***, 844 A.2d 13, 19 (Pa. Super. 2004). In contrast, when a trial court imposes restitution

_____

When a post-sentence motion is deemed denied, the clerk of courts must enter an order deeming the motion denied on behalf of the trial court and serve copies on the parties. ***See*** Pa.R.Crim.P. 720(B)(3)(c). A notice of appeal must be filed within 30 days of the entry of the order denying the post-sentence motion by operation of law. ***See*** Pa.R.Crim.P. 720(A)(2)(b). Here, the clerk of courts failed to enter an order disposing of Appellant's post-sentence motion. Instead, the trial court entered an opinion and order denying relief on February 4, 2020, outside the 120-day period, and Appellant filed a notice of appeal within 30 days of that order. This Court has previously determined that there is a breakdown in the judicial system when the clerk of courts fails to enter a deemed denied order under Rule 720; thus, we may consider the merits of Appellant's appeal. ***See Commonwealth v. Braykovich***, 664 A.2d 133, 138 (Pa. Super. 1995); ***Commonwealth v. Patterson***, 940 A.2d 493, 498-99 (Pa. Super. 2007).

as a condition of probation, "the required nexus is relaxed" and the court "is accorded latitude in fashioning probationary conditions designed to rehabilitate the defendant and to provide some measure of redress to the victim." *Id.*

Our Supreme Court has held that "restitution is a creature of statute and, without express legislative direction, a court is powerless to direct a defendant to make restitution as part of a sentence." *Commonwealth v. Harner*, 617 A.2d 702, 704 (Pa. 1992) (citation omitted). The authority to impose restitution comes from Section 1106 of the Crimes Code. *Commonwealth v. Barger*, 956 A.2d 458, 465 (Pa. Super. 2008) (*en banc*).

Section 1106 states: "Upon conviction for any crime wherein the victim suffered personal injury **directly resulting from the crime**, the offender shall be sentenced to make restitution in addition to the punishment prescribed therefor." 18 Pa.C.S.A. § 1106(a) (emphasis added). This section "applies only for those crimes to property or person where there has been **a loss that flows from the conduct** which forms the basis of the crime for which a defendant is held criminally accountable." *Barger*, 956 A.2d at 465 (quoting *Harner*, 617 A.2d at 706) (emphasis added).

To determine the amount of restitution, a "but-for" test is used – damages which occur as a result of the crime are those which would not have occurred but for the appellant's criminal conduct. *Commonwealth v. Oree*, 911 A.2d 169, 174 (Pa. Super. 2006). The amount of restitution must be determined "under the adversarial system with considerations of due

process." **Commonwealth v. Weir**, 201 A.3d 163, 170 (Pa. Super. 2018), *appeal granted*, 215 A.3d 966 (Pa. 2019).

Appellant asserts that restitution was improper because there is no direct nexus between his EWOC and REAP convictions and Child's injuries. Appellant argues:

> Restitution can only be imposed on Appellant if he directly caused the personal injury to [Child]. Therefore, the only question before the Court in the instant case is whether the injuries suffered by [Child] were the direct result of Appellant's conduct. The imposition of restitution is improper when the injuries are an indirect rather than a direct result of the criminal activity.

Appellant's Brief at 10.

Appellant contends that when the "jury returned a verdict of not guilty on both counts of aggravated assault," it "indicated that the Commonwealth failed to prove that it was Appellant who committed this heinous act." Appellant's Brief at 16. Appellant asserts that the crimes of EWOC and REAP "go to creating risks of injury and conscious disregard or knowing conduct that bring about an expected or reasonably expected result," *id.* at 20, and lack a causation element. He maintains:

> Neither [EWOC] nor [REAP] contain the element of causation. Those offenses address conduct creating the atmosphere where injury could occur. While it is not necessary for actual injury to occur for one to be convicted of these crimes, restitution does not attach to them unless [Child's] injuries were the *direct* result of these crimes. . . .
>
> While causation need not be an element of an offense for restitution to be ordered, the crime must have directly led to the injury for which restitution is sought.

- 6 -

Appellant's Brief at 17 (emphasis in original).  Appellant suggests that "[o]nce the jury [acquitted] Appellant of [aggravated assault], the only reasonable explanation for convicting him on the remaining charges would be that he failed to act upon discovering [Child's] injury.  However, the Commonwealth presented no evidence that Appellant's failure to act contributed to [Child's] injuries or subsequent medical expenses." *Id.* at 18.  We disagree.

The jury found Appellant guilty of EWOC and REAP, and Appellant does not challenge his convictions.  To convict someone of EWOC, the Commonwealth must prove beyond a reasonable doubt that "[a] parent, guardian or other person supervising the welfare of a child under 18 years of age . . . knowingly endanger[ed] the welfare of the child by violating a duty of care, protection or support."  18 Pa.C.S.A. § 4304(a).  There is a three-part test to prove EWOC:

> 1) [T]he accused [was] aware of his/her duty to protect the child;
>
> 2) [T]he accused [was] aware that the child [was] in circumstances that could threaten the child's physical or psychological welfare; and
>
> 3) [T]he accused has either failed to act or has taken action so lame or meager that such actions cannot reasonably be expected to protect the child's welfare.

*Commonwealth v. Bryant*, 57 A.3d 191, 197 (Pa. Super. 2012) (citations omitted).

With regard to REAP, a person is guilty under Section 2705 of the Crimes Code when the person:

(1) possessed "a *mens rea* recklessness," (2) **committed a wrongful deed or guilty act** ("*actus reus*"), and (3) created by such wrongful deed the danger of death or serious bodily injury to another person. The element of "*mens rea* recklessness" has been defined as a conscious disregard of a known risk of death or great bodily harm to another person. "Serious bodily injury" is defined as bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ. We have further held that Section 2705 was directed against reckless conduct entailing a serious risk to life or limb out of proportion to any utility the conduct might have had. Finally, the perpetrator must create an actual condition of danger, not merely an apprehension of danger.

*Commonwealth. v. Emler*, 903 A.2d 1273, 1278 (Pa. Super. 2006) (citations omitted, emphasis added).

As noted above, Appellant concedes that "causation need to be an element of an offense for restitution to be ordered." Appellant's Brief at 17. Here, the trial court opined:

Using the "but-for" test to determine the relationship between [Appellant's] EWOC conviction and [Child's] injuries, the court is satisfied that the sentence of restitution imposed in this case was proper. **By knowingly violating the duty imposed upon him while supervising [Child], [Appellant] created a condition of danger and the serious, permanent bodily injuries sustained by [Child] during [Appellant's] period of supervision were the result of the dangerous condition [Appellant] created.** If a reckless *mens rea* can satisfy the direct nexus necessary for restitution under Section 1106(a), there is no question that the heightened standard of knowing *mens rea* can do so.

Trial Court Opinion, 1/31/20, at 4 (citations omitted, emphasis added).

We discern no error. The record supports the trial court's imposition of restitution under Section 1106(a), where Child's injuries were the direct result, *i.e.*, "a loss that flow[ed]" from Appellant's criminal conduct in committing

- 8 -

EWOC and REAP. *See Barger*, 956 A.2d at 465. But for Appellant's criminal conduct of violating his duty of care while Child was in his custody (EWOC), and acting recklessly such that Child was in danger of death or serious bodily injury (REAP), Child would not have suffered permanent injuries, including "life-threatening head trauma." N.T., 5/29/19, at 319. We reject Appellant's argument that because the jury acquitted him of aggravated assault, no direct nexus existed between Appellant's criminal conduct and Child's injuries. Both EWOC and REAP contain elements which require the fact-finder to determine that the defendant engaged in reckless behavior that "threaten[ed] the child's physical . . . welfare" and created "the danger of death or serious bodily injury to another person." *See Bryant*, 57 A.3d at 197; *Emler*, 903 A.2d at 1278. The Commonwealth put forth ample evidence, including the testimony of investigating detectives, medical professionals, and an expert in the field of child abusive head trauma, to support Appellant's convictions. As a direct result of Appellant committing EWOC and REAP, Child suffered extensive and permanent injuries. Accordingly, the trial court did not err when it ordered restitution under Section 1106(a) for Child's medical expenses resulting from injuries that flowed from Appellant's criminal conduct.

For the above reasons, we discern no error in the trial court's imposition of restitution.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>10/2/2020</u>