J-A26021-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DARNELL LONG | : | |
| | : | |
| Appellant | : | No. 757 EDA 2019 |

Appeal from the Judgment of Sentence Entered February 1, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0000631-2018,
CP-51-CR-0000632-2018

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DARNELL LONG | : | |
| | : | |
| Appellant | : | No. 758 EDA 2019 |

Appeal from the Judgment of Sentence Entered February 1, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0000631-2018,
CP-51-CR-0000632-2018

BEFORE:   BENDER, P.J.E., LAZARUS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY LAZARUS, J.:                    Filed: December 3, 2020

———————————————————

[*] Former Justice specially assigned to the Superior Court.

Darnell Long appeals[1] from the judgment of sentence, entered in the Court of Common Pleas of Philadelphia County, after a jury convicted him of

_____

[1] Long was convicted at two separate docket numbers and filed two separate notices of appeal, each listing both docket numbers. On October 28, 2019, our Court issued rules to show cause why Long's appeals "should not be quashed in light of [**Commonwealth v.** ]**Walker**[, 185 A.3d 969 (Pa. 2018)]." Per Curiam Order, 4/29/19. **See Walker**, **supra** at 977 (requiring filing of "separate appeals from an order that resolves issues arising on more than one docket."). On October 31, 2019, counsel filed responses to the rules to show cause, stating:

> [a]lthough each notice reflects the related information consolidated in the lower court for a single jury trial, the actual notices are separate, and separate EDA numbers have been assigned. . . . Here, where separate appeals have been filed arising from a single trial and final sentence, the quashal of those appeals cannot rationally be related to the decision of the High Court in **Walker**.

Response to Order to Show Cause, 10/31/19, at ¶¶ 9-10. On November 4, 2019, our Court referred the **Walker** issue to the panel assigned to decide the merits of the appeal. Per Curiam Order, 11/4/19.

In **Walker**, our Supreme Court found that Pa.R.A.P. 341 and its Official Comment, which states that "[w]here . . . one or more orders resolves issues arising on more than one docket or relating to more than one judgment, separate notices of appeal must be filed," constituted "a bright-line mandatory instruction to practitioners to file separate notices of appeal." **Walker**, 185 A.3d at 976-77. The failure to do so requires the appellate court to quash the appeal. **Id.** at 977.

Recently, our full Court revisited **Walker** in **Commonwealth v. Johnson**, 236 A.3d 1141 (Pa. Super. 2020) (en banc). There, our Court concluded that "in so far as [**Commonwealth v.** ]**Creese**[ 216 A.3d 1142 (Pa. Super. 2019)], stated 'a notice of appeal may contain **only one** docket number[,]' . . . that pronouncement is overruled." **See Johnson**, **supra** at 1148 (emphasis in original). On November 18, 2020, the Pennsylvania Supreme Court denied Johnson's petitions for allowance of appeal in Nos. 269, 270, 271 & 272 EAL

possessing instruments of crime ("PIC")[2] and the trial court, sitting without a jury in a stipulated trial, convicted him of possessing a firearm prohibited.[3] Upon careful review, we affirm.

The trial court set forth the factual history of this matter as follows:

On November 5, 2017, Philadelphia Police Officer Robert Haberle was on duty when he received a radio call directing him to go to 436 West Wyoming Avenue in Philadelphia to investigate reports of a shooting inside the [] residence committed by a black male with a beard that had gray or white in it. [Officer Haberle] immediately traveled to that location and[,] when he entered the residence, the front door of which was open, he went to the second floor and encountered [] Lynnelle Gaffney, who was standing at the door of [the] second floor bedroom where she slept. The officer went to the second floor and observed that [] Gaffney had been shot and that a second person named Stefvon Wilburn was sitting on the floor of the bedroom suffering from [a] gunshot wound to his leg. The officer asked what happened and [] Gaffney told him that she and Wi[l]burn were using drugs when she heard a gunshot. She added that Darnell Long shot Wilburn and then fired twice at her and that a bullet hit her in the chest.

Both shooting victims were transported to Albert Einstein Hospital by rescue personnel and treated for their wounds. Gaffney suffered gunshots to her left chest and [Wilburn suffered] wounds to his legs. While in the care of rescue personnel, Gaffney stated that [Long] shot her.

Also present at the residence was a woman named Penelope Cabezas, who owned the residence and lived in it, and was in a

_____

2020. **See** Order, 11/18/20 at 2. Accordingly, pursuant to **Johnson**, Long is in compliance with the dictates of **Walker** and we may consider the merits of his appeal.

[2] 18 Pa.C.S.A. § 907.

[3] 18 Pa.C.S.A. § 6105(a)(1) (F1).

back bedroom when the shooting happened. Officer Haberle transported [] Cabezas to a nearby police station.

On the day the incident occurred, [] Gaffney, her boyfriend, [] Wilburn, and [Long] were watching television and playing cards while drinking alcohol and smoking marijuana, activities they had been engaging in for about two days. At some point, Wilburn left to buy beer and marijuana and[,] when he returned[,] Gaffney began searching for something in her bed that she used to roll up marijuana while sitting with Wilburn and [Long] in her bedroom. While doing so, she heard something that drew her attention to [Long,] who was holding a gun wrapped in a hooded sweatshirt. She immediately asked him what [he was] doing and[,] as she stood up, she heard a [gunshot] and then [heard] Wilburn say "Ah" and then begin screaming as if he had been shot. Gaffney turned toward [Long,] who began walking toward her. As [Long] did so[,] he fired three or four shots at Gaffney, one of which struck her in the ribs on her left side[. Gaffney] repeatedly asked [Long] what he was doing. [Long], who said nothing before or after shooting Gaffney and Wilburn, then walked out of the bedroom.

After [Long] left, Gaffney used a blanket to [stanch] the flow of blood and took a phone from Wilburn[,] who was calling the police. Gaffney then ran downstairs and out of the back door of the residence before going around to the front door[,] where she was tended to by Paris Berry, a next[-]door neighbor. According to Gaffney, she, Wilburn[,] and [Long] were long[-]time friends and nothing occurred that night to prompt [Long] to shoot her and Wilburn. She added that she did not have a weapon and did not know Wilburn to carry a firearm.

Gaffney received treatment for her injuries at Einstein Hospital. She did not have to undergo surgery and was released [approximately] twelve hours [] after arriving at the hospital.

Penelope Cabezas was sleeping in a bedroom near Gaffney's room when the shootings occurred. She [was] awakened by the sound of Wilburn yelling her name and went into the hallway[,] where she saw Wilburn lying on the floor[,] appearing as if "someone twisted him and threw him on the floor." She thereafter encountered Gaffney, who also had been shot[;] neighbors and the police arrived soon thereafter. Cabezas, who had seen [Long] before the shooting, did not hear the shots or see [Long] after the shooting occurred.

Philadelphia Police Officer Richard Green also went to the scene following the shooting. According to Officer Green, both Gaffney and Wilburn identified [Long] as the person who shot both of them when asked [by medical personnel] to name the shooter[,] but once they arrived at the hospital, they said that they could not identify the shooter.

Police examined the bedroom where the shooting occurred and recovered a bullet from inside a wall[, as well as] other evidence. They also observed a small amount of blood on the floor and a bullet hole in a wall. Based on the evidence collected by police and the information received from Gaffney and Wilburn, police secured a [] warrant for [Long's] arrest. Police arrested [Long] pursuant to the warrant on November 16, 2017.

Trial Court Opinion, 9/6/19, at 2-4 (citations to record omitted).

On September 25, 2018, Long was convicted of the above offenses. The jury acquitted him of three counts of aggravated assault.[4] On February 1, 2019, the trial court sentenced Long to 10 to 20 years' incarceration for possessing a firearm prohibited.[5] No further penalty was imposed for PIC. Long filed post-sentence motions, which were denied on February 13, 2019. This timely appeal follows. Both Long and the trial court have complied with Pa.R.A.P. 1925.

Long raises one issue for our review: "In imposing the statutory maximum sentence, did not the trial court err and abuse its discretion by

---

[4] 18 Pa.C.S.A. § 2702.

[5] Long had a prior record score of 5 and an offense gravity score of 10, resulting in a standard guideline sentence of 5 to 6 years' incarceration, +/- 12. Thus, Long's sentence of 10 to 20 fell three years beyond the top of the aggravated range of the sentencing guidelines and constituted a statutory maximum sentence. *See* 18 Pa.C.S.A. § 1103 (fixing sentencing term for felony of first degree at not more than 20 years).

considering an impermissible sentencing factor, namely, crimes for which [Long] was acquitted by a jury?" Brief of Appellant, at 4.

Long's claim raises a challenge to the discretionary aspects of his sentence. Such a claim does not entitle an appellant to review as a matter of right. **Commonwealth v. Swope**, 123 A.3d 333, 337 (Pa. Super. 2015). Rather, before this Court can address such a discretionary challenge, an appellant must invoke this Court's jurisdiction by: (1) filing a timely notice of appeal, **see** Pa.R.A.P. 902 and 903; (2) properly preserving the issue at sentencing or in a motion to reconsider and modify sentence, **see** Pa.R.Crim.P. 720; (3) including in his brief a concise statement of reasons relied upon for allowance of appeal pursuant to Pa.R.A.P. 2119(f); and (4) raising a substantial question that the sentence appealed from is not appropriate under the Sentencing Code. **Id.**

Here, Long filed a post-sentence motion for reconsideration of sentence, followed by a timely notice of appeal to this Court. He has also included in his brief a concise statement of reasons relied upon for allowance of appeal with respect to the discretionary aspects of his sentence pursuant to Rule 2119(f). Accordingly, we must now determine whether Long has raised a substantial question that his sentence is not appropriate under the Sentencing Code.

In his Rule 2119(f) statement, Long asserts that the trial court imposed "an unreasonable and manifestly excessive sentence" that was "well beyond the aggravated range of the [S]entencing [G]uidelines" and was based, "in whole or in part, . . . on an impermissible factor, namely, conduct for which

the jury had acquitted [] Long." Brief of Appellant, at 11-12. This Court has repeatedly held that a claim that a sentence is excessive because the trial court relied on impermissible factors raises a substantial question. *Commonwealth v. Bryant*, 237 A.3d 470 (Pa. Super. 2020) (claim that trial court imposed  excessive sentence and considered  impermissible factor in doing so raises substantial question); *Commonwealth v. Allen*, 24 A.3d 1058, 1064-65 (Pa. Super. 2011) ("[A] claim that a sentence is excessive because the trial court relied on an impermissible factor raises a substantial question."). Accordingly, we grant Long's petition for allowance of appeal and address the merits of his claim.

We begin by noting our standard of review in sentencing matters:

Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias[,] or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Raven*, 97 A.3d 1244, 1253 (Pa. Super. 2014). Deference is accorded to the trial court's pronouncement of sentence because the trial court is in the best position to determine the proper penalty for a particular offense based upon an evaluation of the individual circumstances before it. *Commonwealth v. Ward*, 568 A.2d 1242, 1243 (Pa. 1990). "When imposing a sentence, the sentencing court must consider the factors set out in 42 Pa.C.S.A. § 9721(b), that is, the protection of the public, gravity

of offense in relation to impact on victim and community, and rehabilitative needs of the defendant[.]" ***Commonwealth v. Fullin***, 892 A.2d 843, 847 (Pa. Super. 2006). Furthermore, "[a] trial court judge has wide discretion in sentencing and can, on the appropriate record and for the appropriate reasons, consider any legal factor in imposing a sentence[.]" ***Commonwealth v. Stewart***, 867 A.2d 589, 593 (Pa. Super. 2005) (citation omitted). The sentencing court must, however, consider the Sentencing Guidelines. ***See Fullin***, 892 A.2d at 847. Finally, where the court is in possession of a presentence report ("PSI"), we "presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." ***Commonwealth v. Watson***, 228 A.3d 928, 936 (Pa. Super. 2020), quoting ***Commonwealth v. Devers***, 546 A.2d 12, 18 (Pa. 1988).

Long argues that the trial court impermissibly considered the aggravated assault charges for which he was acquitted in fashioning its statutory-maximum sentence for his conviction for persons not to possess a firearm. In support of his claim, Long cites the following statement made by the judge at sentencing:

> In this particular case[,] this [c]ourt is well aware of the inconsistency of the [c]ourt's jury verdict. But the [c]ourt is also aware of the fact that two people came in here with gunshot wounds testifying that you shot them; one in the chest and one in the leg.
>
> So under those circumstances, sir, having considered all the facts and circumstances in this case, on the charge of felony, first-

degree, [s]ection 6105, your sentence is 10 to 20 years in a state correctional institution.

N.T. Sentencing, 2/1/19, at 13.

Long asserts that his claim is controlled by this Court's decision in

**Commonwealth v. Smart**, 564 A.2d 512 (Pa. Super. 1989).  In that case,

Appellant participated in the burglary of a home used as a shelter for abused women.  Two women testified that they were raped during the commission of the crime and that appellant participated in the rapes.  The appellant, however, testified that he had been drinking when approached by two individuals to commit a burglary and/or robbery.  According to his testimony[,] appellant led the individuals to the home but then indicated an unwillingness to participate further and left.  At the conclusion of a jury trial, appellant was convicted of burglary but acquitted of the remaining charges.

**Id.** at 513.  Although the guideline sentences for burglary were 12 to 29 months in the standard range and 29 to 36 months in the aggravated range, appellant was sentenced to 8 to 20 years' imprisonment, representing a minimum sentence of more than 2½ times the upper end of the aggravated range.  The trial court imposed this sentence despite a recommendation in the PSI report of a sentence in the 2½ to 5 years range.  The PSI also mentioned that it was the practice of the local court to impose a long county or short state prison sentence for such convictions of burglary.

In holding that the trial court had abused its discretion in sentencing the appellant outside the aggravated range of the guidelines, this Court noted that the court had improperly relied upon juvenile conduct as an aggravating factor and failed to consider mitigating evidence, including the defendant's

withdrawal from the criminal venture prior to the commission of the most egregious offenses, as well as his intoxication. The Court stated:

> Although these factors cannot be considered excuses for committing a crime[,] they could be considered factors depreciating the voluntariness of the enterprise or depicting a reconsideration of the criminal endeavor. In either case they would seem to be factors tending to mitigate the gravity of the offense.

*Id.* at 514. The Court also observed that

> [t]he circumstances of the present case, in our opinion, invite a tremendous amount of suspicion that the trial court was simply disregarding the jury's verdict of not guilty of the various charges other than burglary and imposing sentence as if appellant had been convicted of those charges. This is a situation which can erode the confidence in the jury trial system and violates the convicted individual's fundamental right to be judged by a jury of his peers.

*Id.* Long argues that, as in *Smart*, the trial court sentenced him more harshly because it took into consideration the aggravated assault charges of which the jury acquitted him.

> This Court has previously stated:
>
> A sentence is invalid if the record discloses that the sentencing court may have relied in whole or in part upon an impermissible consideration. This is so because the court violates the defendant's right to due process if, in deciding upon the sentence, it considers unreliable information, or information affecting the court's impartiality, or information that it is otherwise unfair to hold against the defendant.
>
> Simply put, the evidence upon which a sentencing court relies must be accurate, and there must be evidentiary proof of the factor[] upon which the court relied.

*Commonwealth v. Downing*, 990 A.2d 788, 793 (Pa. Super. 2010) (quotations and citations omitted). Nevertheless, we have also held: "[a] judge may consider unadjudicated arrests in sentencing a defendant, so long as the arrests are not regarded as establishing criminal conduct, **and even arrests that result in acquittals, if the judge is aware of the acquittal**." *Commonwealth v. Bowers*, 25 A.3d 349, 356 (Pa. Super. 2011) (emphasis added); *see also Commonwealth v. Craft*, 450 A.2d 1021, 1024 (Pa. Super. 1982) ("[A] court, in imposing sentence[,] may consider prior arrests and concurrent charges as long as the court realizes that the defendant had not been convicted on those prior charges[.]"). As this Court has repeatedly observed, "an acquittal cannot be interpreted as a specific finding in relation to some of the evidence presented; an acquittal may represent the jury's exercise of its historic power of lenity[.]" *Commonwealth v. Barger*, 956 A.2d 458, 461 (Pa. Super. 2008). "When an acquittal on one count in an indictment is inconsistent with a conviction on a second count, the court looks upon [the] acquittal as no more than the jury's assumption of a power which they had no right to exercise, but to which they were disposed through lenity." *Commonwealth v. Swann*, 635 A.2d 1103, 1104 (Pa. Super. 1994).

Here, the trial court was clearly aware that Long had been acquitted of the assault charges, having presided over his jury trial, and acknowledged that fact on the record. *See* N.T. Sentencing, 2/1/19, at 13 ("[T]his [c]ourt is well aware of the inconsistency of the [c]ourt's jury verdict."). Prior to imposing sentence, the court listened to argument from defense counsel and

- 11 -

was in possession of a PSI. Accordingly, we presume that the court was aware of and considered all relevant sentencing factors and considerations. **Devers**, **supra**.

However, as the trial court also noted, Long had a significant criminal history, including "three juvenile arrests, including one for aggravated assault, adjudications, 31 adult arrests, seven violations, 15 convictions, six revocations, and 13 separate commitments[.]" N.T. Sentencing, 2/1/19, at 12-13. Considerations of a defendant's extensive criminal history and failure to rehabilitate, and the concomitant need to protect society and deter future wrongdoing, have been held to be sufficient reasons to support deviations from the guidelines. **Commonwealth v. Tirado**, 870 A.2d 362, 368 (Pa. Super. 2005) (affirming guidelines deviation based on defendant's extensive criminal history, failure to rehabilitate, and need to protect society). **See also Commonwealth v. Mouzon**, 828 A.2d 1126, 1129 (Pa. Super. 2003) (affirming deviation from guidelines where trial court fashioned sentence primarily based on "how [the] record bore on Mouzon's prospects for rehabilitation, coupled with the court's sense of duty to protect the public").

Moreover, we find Long's reliance on **Smart** misplaced. There, unlike here, this Court concluded that the sentencing judge improperly relied upon a single incident of juvenile misconduct[6] as an aggravating factor and also failed

---

[6] Specifically, at 15 years of age or less, Smart knocked a five year old off of a bicycle and stole it. This Court concluded that, "[a]lthough such behavior is

to consider relevant mitigating factors in fashioning its sentence. Although, based on the totality of the facts before it, the Court found that the trial court's sentence "create[d] a strong suggestion that appellant [wa]s being punished for crimes of which he was acquitted," *Smart*, 564 A.2d at 514, the Court did not hold that a sentencing judge could not consider the totality of the circumstances of a case, including conduct for which the defendant was acquitted. In the matter *sub judice*, the sentencing court was within its discretion to acknowledge and consider the fact that, as a result of Long's illegal possession of a firearm, two individuals were shot and injured, even though the jury, in its wisdom, chose not to convict him of aggravated assault. *See Commonwealth v. Archer*, 722 A.2d 203 (Pa. Super. 1998) (victim's death resulting from gunshot could be considered in calculating offense gravity score, even though defendant was acquitted of murder).

In sum, while Long's sentence is undeniably substantial, we are unable to conclude that the trial court exercised its discretion in a manner that was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will. *Raven*, *supra*.

Judgment of sentence affirmed.

---

not to be condoned and is most definitely anti-social, . . . imprisonment for such behavior could lead to the incarceration of many a neighborhood bully." *Smart*, 564 A.2d at 514.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/3/20